**R.W. McINTYRE, Appellant,**

v.

**LOCKHEED CORPORATION, Appellee.**

No. 2–97–341–CV.

Court of Appeals of Texas, Fort Worth.

May 21, 1998.

David Fielding, Nathan B. Schattman, Fielding, Barrett & Taylor, L.L.P., Fort Worth, for Appellant.

David F. Chappell, Mark A. Anderson, Chappell & McGartland, L.L.P., Fort Worth, for Appellee.

Before DAY, LIVINGSTON and BRIGHAM, JJ.

## OPINION

LIVINGSTON, Justice.

## I. INTRODUCTION

Appellant R.W. McIntyre appeals from the trial court's grant of summary judgment in favor of appellee Lockheed Corporation (Lockheed) in his suit for workers' compensation-related retaliatory discharge. In three points, McIntyre claims the trial court: (1) erred in granting summary judgment; and (2) abused its discretion in denying his motion for new trial. We affirm the trial court's judgment.

## II. FACTUAL BACKGROUND

In April 1987, McIntyre went to work for General Dynamics (now Lockheed) in its Quality Assurance Department as a Quality Control Engineer. In early 1988, McIntyre injured his knee and filed a workers' compensation claim. He had surgery on the knee in March 1988. McIntyre asserts he refrained from scheduling a second surgery on the knee at the behest of his then supervisor, Willie Keith, because Keith asked him to do it when it was more convenient to Lockheed.

In 1990, Lockheed began instituting a reduction in force designed to cut two-thirds of its Fort Worth work force. In May 1993, Lockheed's reduction in force focused on the Quality Assurance Department and McIntyre's manager, Mike Scruggs, was told to cut 50 percent of the 227 employees in his department. On May 21, 1993, Scruggs wrote a memo to his supervisor, H.R. O'Neal, in which he detailed his proposed reductions and stated that the reductions "allow[ed] only for satisfying the minimum contractual requirements" and "[did] not have cushion built in for[:] vacations, 990's, sick leave, additional unplanned task[s], or absences."

As part of the reduction, Scruggs determined Lockheed could only keep one of its three Quality Control Engineers. Using Lockheed's guidelines for retention and layoff selection, Scruggs rated the three individuals and determined that McIntyre ranked third because he had fewer skills than the other two individuals, his particular skill was being outsourced, and his communication skills were lacking. Thus, Scruggs recommended to his superiors that McIntyre be one of the two Quality Control Engineers slated for termination. Scruggs's superiors approved his recommendation.

On July 6, 1993, McIntyre received notice that he was to be terminated on September 7, 1993. McIntyre went to his superiors and asked that the termination be postponed so he could take advantage of his medical benefits and have the second surgery. This first request for postponement was granted. Sometime later, McIntyre asked for another postponement and Lockheed granted a second postponement. On December 7, 1993, he

was sent notice that he was to be laid off on February 7, 1994.

According to McIntyre, on December 16, 1993, Robert Matthews, a Quality Assurance director at Lockheed, held a meeting in which he discussed the reduction in force and allegedly commented that the layoffs were being used to get rid of "dead heads" who had used workers' compensation insurance or had absenteeism problems. McIntyre re-injured his knee on January 12, 1994, and immediately went on workers' compensation leave. McIntyre was laid off, as planned, on February 7, 1994. On March 15, 1994, McIntyre had surgery on his knee.

On September 15, 1995, McIntyre filed suit for retaliatory discrimination related to his filing of a workers' compensation claim. Lockheed filed its motion for summary judgment on April 25, 1997, and the trial court granted the motion on August 14, 1997. McIntyre filed a motion for new trial that was denied on October 24, 1997.

### III. DISCUSSION

#### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990); *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot

be established. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

#### B. Propriety of Summary Judgment

In three points, McIntyre contends the trial court erred in granting summary judgment and in denying his motion for new trial because there are genuine issues of material fact as to whether Lockheed terminated him in retaliation for filing a workers' compensation claim. We will discuss these three points together.

Section 451.001 of the Texas Labor Code states that a person may not discharge or discriminate against an employee who files a workers' compensation claim in good faith. *See* TEX. LABOR CODE ANN. § 451.001 (Vernon 1996). In order to recover damages for retaliatory discharge, the employee must prove that but for their filing of a workers' compensation claim, the discharge would not have occurred when it did. *See Continental Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633–37 (Tex.1995). The employee has the burden of demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits. *See Duhon v. Bone & Joint Physical Therapy Clinics*, 947 S.W.2d 316, 318 (Tex.App.—Beaumont 1997, no writ). This causal connection is an element of the employee's prima facie case and may be established by direct or circumstantial evidence. *See id.* at 319. Once the employee has established the causal link, the employer bears the burden to rebut the alleged improper termination by showing there was a legitimate reason behind it. *See id.* Thereafter, in order to survive a motion for summary judgment, the

burden shifts back to the employee to produce controverting evidence of a retaliatory motive. *See id.*

Circumstantial evidence of a causal link between termination and the filing of a compensation claim may include: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; and (4) discriminatory treatment in comparison to similarly situated employees. *See Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex. App.—Fort Worth 1993, writ denied).

Appellant asserts three evidentiary causal links: (1) Scruggs knew about McIntyre's workers' compensation claim; (2) Scruggs's May 23, 1993 memo shows a tendency to discriminate against those who take time off; and (3) Matthews's statements show Lockheed used the reduction to terminate those who had filed workers' compensation claims. Lockheed contends that the evidence, even when viewed in the light most favorable to McIntyre's claim, fails to show a causal link between his termination and his filing of a workers' compensation claim. We agree.

First, the fact that Scruggs had some knowledge that McIntyre had filed a workers' compensation claim does not, by itself, constitute a causal connection. In his affidavit, Scruggs states that he did not recall that McIntyre had filed a workers' compensation claim until after McIntyre filed suit and that he did not consider the claim at all in making his decision. McIntyre does not rebut this evidence. Nor does he rebut Lockheed's evidence that none of the supervisors who approved his termination knew about his claim.

Even were we to assume that Scruggs had full knowledge of the 1988 claim when he made his decisions, McIntyre presents no evidence that Scruggs' determination was affected by any knowledge of the prior claim, nor does he refute Lockheed's evidence that he ranked last among his peers. McIntyre does not even allege there was any: (1) failure to adhere to established company policies; or (2) discriminatory treatment in comparison to similarly situated employees. *See Palmer*, 852 S.W.2d at 61.

Second, a reading of Scruggs's memo reveals that he was merely representing to his superiors that his proposed reductions reflected the bare minimum of employees necessary to meet Lockheed's contracts. Scruggs's memo is entirely consistent with having to reduce one-half of one's employees. We find no logical connection between these statements and McIntyre's allegation that Scruggs was intimating or inferring that employees who file workers' compensation claims should be fired.

Third, even if Matthews had said that "deadheads" would be terminated as part of the reduction, McIntyre has failed to show that Matthews had any control whatsoever over McIntyre's fate. Scruggs and Jim Carroll, the former Vice President of the Quality Assurance Department, both state that Matthews took no part in the decision to terminate McIntyre, and McIntyre presents no evidence to the contrary. Moreover, the evidence is uncontested that McIntyre's termination was decided well before any alleged statements by Matthews. McIntyre was present for Matthews's alleged statements only because Lockheed had postponed his termination on two separate occasions at McIntyre's request.

Thus, we find that McIntyre has failed to establish a causal link between his termination and the filing of his workers' compensation claim. Moreover, even if McIntyre had established a causal link, Lockheed more than met its burden to show a nondiscriminatory, legitimate reason for his termination—the 50 percent reduction in force and McIntyre's ranking—and McIntyre failed to produce controverting evidence of a retaliatory motive. *See Duhon*, 947 S.W.2d at 319. Thus, McIntyre has failed to show that but for his filing of a workers' compensation claim, he would not have been terminated when he was. *See Cazarez*, 937 S.W.2d at 450. We overrule appellant's three points and affirm the trial court's judgment.