Revised December 28, 1998

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-50445

BERNARDO G. BOCALBOS,

Plaintiff-Appellee/Cross-Appellant,

versus

NATIONAL WESTERN LIFE INSURANCE COMPANY,

Defendant-Appellant/Cross-Appellee.

Appeals from the United States District Court
for the Western District of Texas

December 23, 1998

Before POLITZ, Chief Judge, JONES and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

National Western Life Insurance Company seeks reversal of judgment on a jury verdict based on claims that it violated the Family Medical Leave Act of 1993 ("FMLA"),[1] by interfering with Bernardo Bocalbos' leave and subsequently terminating his employment in retaliation for taking FMLA leave.

---

[1] 29 U.S.C. §§ 2601-2619.

## Background

Bocalbos was born in the Philippines and became a naturalized citizen in 1987. In January 1989, he began working in National Western's actuarial department as an assistant actuary. In 1992 the Chief Actuary implemented a Student Actuarial Program which required all assistant actuaries to earn 40 Society of Actuaries examination credits by May 1994 in order to remain employed in the actuarial department.[2] The Program provided certain incentives for assistant actuaries to take the examinations, including permitting study time at work, paying for study materials and the costs of the first two examinations, and increasing the employee's salary for examinations passed. The memorandum describing the Program stated that "[w]hile the taking of the exams is an individual decision on the part of the student, it should be understood that a decision to not continue with the exams, without Chief Actuary approval, may reduce the likelihood of continued employment within the Actuarial Department."

From 1992 to early 1995, there were three assistant actuaries in the department – Bocalbos, Carol Lo, and David Olson. By the end of the May 1994 examinations none of the employees had achieved the requisite 40 credits; Lo

---

[2] The actuarial exams are given twice a year in May and November. A person sitting for an examination can earn between 10 to 40 credits depending on the examination that is taken.

had earned 35 credits, Olson had earned 15, and Bocalbos had earned none. The Chief Actuary extended the time, permitting all three employees to sit for the November 1994 exams. After the November 1994 exams Lo picked up an additional 40 credits, bringing her total exam credits to 75, Olson earned an additional 15 credits bringing his total to 30, but Bocalbos did not pass any exam, leaving him with zero credits.

In April 1992, Bocalbos adopted his brother's two children who lived in the Philippines. On April 13, 1993, Bocalbos petitioned the Immigration and Naturalization Service for Relative Immigrant Visas. The visas were granted on November 2, 1994. In February 1995, Bocalbos requested FMLA leave, from April 10, 1995 to June 16, 1995, to bring the children from the Philippines to Austin, Texas. Defendant approved the leave on March 7, 1995. On March 28, 1995 Bocalbos read and initialed a memorandum from the Chief Actuary that stated that unless he passed at least 40 credits in the Actuarial Examination sittings in May of 1995, his employment would be terminated.

Before his leave began Bocalbos signed up to take several Society of Actuaries examinations in May 1995. Upon his return to work on July 3, 1995,

however, he reported that he did not take the May exams.[3]  Shortly thereafter, Bocalbos was terminated for failure to take and pass the actuarial examinations. He filed this complaint in state court claiming that he was fired in violation of the FMLA and Title VII.  After removal to federal court, both parties filed motions for summary judgment.  The district court dismissed the Title VII claim, but denied the motion as to the FMLA claims.  A jury found that National Western had interfered with Bocalbos' FMLA rights and terminated him in retaliation for having requested and taken leave.  National Western unsuccessfully moved for judgment as a matter of law.  The district court ultimately awarded Bocalbos damages of $26,106.82 with post-judgment interest.  The court ordered that Bocalbos be reinstated, but denied his request for liquidated damages.  Both parties timely appealed.

Analysis

We review *de novo* the trial court's ruling on a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a).[4]  Such a judgment should be granted not

---

[3] Bocalbos faxed a memorandum to Carol Jackson, National Western's Vice-President of Human Resources, requesting an additional two weeks, which was granted.  As a result, Bocalbos' leave lasted 12 weeks, beginning on April 10, 1995 and ending on June 30, 1995.

[4] **Omnitech Int'l, Inc. v. Clorox Co.**, 11 F.3d 1316 (5th Cir. 1994); **Travis v. Bd. Of Regents of Univ. of Tex.**, 122 F.3d 259 (5th Cir. 1997), cert. denied, 118 S.Ct. 1166 (1998).

only when the non-movant presents no evidence, but also when there is not a sufficient "conflict in substantial evidence to create a jury question."[5]

The Family Medical Leave Act of 1993 was enacted to permit employees to take reasonable leave for medical reasons, for birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.[6] The Act seeks to meet the needs of families in a manner that accommodates the legitimate interests of employers.[7] The Act applies to private-sector employers of 50 or more employees[8] and an employee is eligible for FMLA leave after working for a covered employer for at least 1250 hours during the preceding 12 months.[9] It is undisputed that National Western is a covered employer and that Bocalbos is an eligible employee.

The Act has two distinct provisions. First, it provides certain entitlements.[10]

---

[5] **Foreman v. Babcock & Wilcox Co.**, 117 F.3d 800, 804 (5th Cir. 1997) (citation omitted), cert. denied, 118 S.Ct. 1050 (1998).

[6] 29 U.S.C. § 2601(b)(1) & (2).

[7] 29 U.S.C. § 2601(b)(3).

[8] 29 U.S.C. § 2611(4).

[9] 29 U.S.C. § 2611(2).

[10] See **Hodgens v. General Dynamics Corp.**, 144 F.3d 151 (1st Cir. 1998); **Diaz v. Fort Wayne Foundry Corp.**, 131 F.3d 711 (7th Cir. 1997); **Morgan v. Hilti, Inc.**, 108 F.3d 1319 (10th Cir. 1997).

An eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 workweeks in any 12-month period when the employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position";[11] to care for a close family member with a serious health condition;[12] because of the birth of a son or daughter;[13] or placement of a child with the employee for adoption or foster care.[14] Following a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms.[15] Second, the Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.[16] It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided under" the Act.[17] Further, an employer is prohibited from discriminating or retaliating against an employee for exercising his rights

---

[11] 29 U.S.C. § 2612(a)(1)(D).

[12] 29 U.S.C. § 2612(a)(1)(C).

[13] 29 U.S.C. § 2612(a)(1)(A).

[14] 29 U.S.C. § 2612(a)(1)(B); see also § 2611(12).

[15] 29 U.S.C. § 2614(a).

[16] **Hypes v. First Commerce Corp.**, 134 F.3d 721 (5th Cir. 1998); **Hodgens**; **Diaz**.

[17] 29 U.S.C. § 2615(a)(1).

under the Act.[18]

Bocalbos asserts violations of the anti-discrimination provisions of the Act because National Western allegedly improperly interfered with his right to take leave by requiring that he take the exam during his leave and then subsequently discharging him in retaliation for having taken the FMLA leave. To establish a *prima facie* case for discrimination or retaliation under the FMLA, the plaintiff must demonstrate that: (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.[19] If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for the termination. Once the employer has done so, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation.[20]

---

[18] 29 U.S.C. § 2615(a)(2).

[19] **Oswalt v. Sara Lee Corp.**, 889 F.Supp. 253 (N.D.Miss. 1995), aff'd, 74 F.3d 91 (5th Cir. 1996); **Hodgens**, 144 F.3d at 160-161; **Diaz**, 131 F.3d at 712; **Hilti**, 108 F.3d at 1323.

[20] **Oswalt**, 889 F.Supp. at 259; **Hypes**.

The district court, in its summary judgment order, found that although the adoption proceedings began in the Philippines in 1991, the INS procedures for bringing the children to the United States were not completed until the INS granted the children their visas in November 1994. The trial court observed that the Act suggests "that the adoption provision was intended in part, to address the needs for the parent's presence when the child is first introduced into his or her new home. The text of the FMLA notes the importance to a child's development that parents be able to participate in early child rearing."[21] The district court concluded that under the unique facts of this case, Bocalbos was protected under the FMLA. We do not agree.

The statute permits employees to take unpaid leave "[b]ecause of the placement of a son or daughter with the employee for adoption or foster care."[22] Further, when taking such leave because of the placement of a child, the employee's entitlement to FMLA leave "shall expire at the end of the 12-month period beginning on the date of such . . . placement."[23] We conclude that the Act is inapplicable in the situation at bar. The adoption of the two children was made

---

[21] District Court "Order and Partial Judgment," December 10, 1996 at 6.

[22] 29 U.S.C. § 2612(a)(1)(B).

[23] 29 U.S.C. § 2612(a)(2); 29 C.F.R. § 825.201.

final in April 1992, more than one year before the effective date of the Act on August 5, 1993.  In April 1992, Bocalbos had become a parent of the children, with complete rights, obligations and responsibilities, yet he sought FMLA leave almost three years after the adoption was finalized.[24]  While we recognize the importance of child-parent bonding and of a parent's presence in early child rearing, we cannot read the Act to extend "placement for adoption" to encompass Bocalbos' situation.  The children, ages 17 and 12, were not being placed for adoption in April 1995, but were being brought to the United States to live in Austin, Texas.  The Act contemplates placement for adoption to include the circumstances in which a child is placed in a home <u>before</u> the adoption is finalized.[25]  There is no indication, however, that Congress intended placement to include a situation in which the children were actually adopted, left in another

---

[24] The Department of Labor regulations provide:

> Employers covered by FMLA are required to grant FMLAleave pursuant to paragraph (a)(2) of this section before the actual placement or adoption of a child if an absence from work is required for the placement for adoption or foster care to proceed.  For example, the employee may be required to attend counselling sessions, appear in court, consult with his or her attorney or the doctor(s) representing the birth parent, or submit to a physical examination.  The source of an adopted child (e.g., whether from a licensed placement agency or otherwise) is not a factor in determining eligibility for leave for this purpose.

29 C.F.R. § 825.112(d).

[25] <u>See</u> 29 C.F.R. § 825.112(d) (1997).

country for an extended period of time, and then retrieved at the convenience of the adoptive parent. Congress placed a 12-month limitation on the eligibility so that the period of time for employees to request leave would not be indefinite or too far removed from the actual adoption.[26]

Bocalbos also contends that the defendant granted the leave and therefore should not be permitted to now insist that the FMLA was not applicable.[27] His argument is not persuasive in light of the fact that National Western was not aware at the time of his request that he had adopted the children in 1992.

Even if the Act did apply to the facts of this case, it is clear that National Western did not interfere with Bocalbos' leave and tendered a nonretaliatory reason for his termination. National Western did not "interfere with, restrain, or deny the exercise of or the attempt to exercise" Bocalbos' FMLA rights. Rather, National Western made it clear that the actuary students would be required to take the exams in May and November of each year until they achieved the requisite score. Bocalbos was fully aware of the test dates when he placed his request for leave from April through June. When questioned, he acknowledged

---

[26] 29 U.S.C. § 2612(a)(2).

[27] It is the employee's responsibility to determine whether leave qualifies under the FMLA. 29 C.F.R. § 825.208(a); see also **Manuel v. Westlake Polymers Corp.**, 66 F.3d 758 (5th Cir. 1995).

that he could have chosen the time period after the exam to take the leave.

As for Bocalbos' termination, the attainment of the Society of Actuaries examination credits had been a job requirement since June 1992, and at the time of his termination in June 1995, Bocalbos had attained no credits whatsoever. The failure to satisfy a legitimate job requirement is a nondiscriminatory reason and sufficient grounds for his termination.[28] We conclude and hold that no reasonable juror could conclude that National Western fired Bocalbos because he took leave under the FMLA.[29]

The judgment against National Western is REVERSED and judgment is RENDERED herein in favor of National Western, rejecting the claims of Bernardo Bocalbos.

---

[28] **Faruki v. Parsons S.I.P, Inc.**, 123 F.3d 315 (5th Cir. 1997); **Nichols v. Loral Vought Sys. Corp.**, 81 F.3d 38 (5th Cir. 1996); **Hilti**.

[29]See **Hypes**.