**C & D ROBOTICS, INCORPORATED,**
**Appellant,**

**v.**

**Gregory J. MANN, Appellee.**

No. 06–00–00098–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 4, 2001.

Decided May 24, 2001.

J. Mitchell Smith, Germer, Bernsen & Gertz, L.L.P., Beaumont, Bruce M. Partain, Wells, Peyton, Greenberg & Hunt, LLP, Beaumont, for appellant.

Curtis W. Leister, Reaud, Morgan & Quinn, Inc., Beaumont, Wesley E. Hoyt, Bates & Hoyt, Lufkin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Gregory J. Mann brought an action against C & D Robotics, Incorporated, his former employer, for wrongful termination in retaliation for filing a workers' compensation claim. *See* Tex. LAB.CODE ANN. § 451.001 (Vernon 1996).[1] The jury found in favor of Mann and found he was entitled to $40,000.00 back pay[2], $75,000.00 in compensatory damages, and $250,000.00 in exemplary damages. On appeal, C & D contends that (1) the evidence is legally and factually insufficient to support the jury's finding of a causal link between Mann's worker's compensation claim and his discharge; (2) the evidence does not support an award of actual or compensatory damages; (3) the jury's finding of malice justifying an award of exemplary damages is not supported by the evidence; and (4) prejudgment interest is unavailable for future losses, so the trial court erred by not segregating the actual damages.[3] With the exception of the challenges to the malice and exemplary damages findings,

---

1. More commonly referred to as the anti-retaliation statute.

2. The jury originally found that Mann was entitled to $65,000.00 in back pay. The trial court reduced the back pay amount to $40,000 .00 after it sustained, in part, C & D's

motion for judgment notwithstanding the verdict.

3. Past and future damages were calculated together when the prejudgment interest award was calculated.

we overrule each of C & D's points of error. We sustain C & D's challenge to the malice and exemplary damages findings, and we reform the judgment to delete the exemplary damages recovery.

Mann began his employment with C & D in May 1995 as a robotics mechanic. On December 6, 1995, he sustained a back injury while on the job. As a result, Mann was out of work for approximately six to eight months. Shortly after Mann returned to work, he had a dispute with Kemper Insurance Company, C & D's workers' compensation carrier, about compensation for Mann's lost overtime wages. Mann later filed a claim with the Texas Workers' Compensation Commission formally contesting Kemper's coverage decision. At about this time, Larry Webb, the person formerly in charge of handling C & D's workers' compensation claims, told Mann that he was not going to get the money for which he had asked. Additionally, C & D prohibited Mann from making telephone calls to Kemper during working hours without C & D's prior approval.[4] In November 1996, C & D was purchased by Charles Davis, and Webb was succeeded by Michael Yennie.[5] In December, C & D's new ownership gave Mann a "very good" overall rating and a raise. In April 1997, Mann was promoted to production controls director. In October of that year, he received another raise, bringing his salary to approximately $25,000.00 per year. Mann underwent back surgery at the beginning of December and returned to work around January 15, 1998. After an initial benefit review conference with the Texas Workforce Commission, Mann sought a formal contested case hearing before that body.[6] Within a few weeks, on about May 17, Yennie met with Davis, C & D's president, to discuss Mann's termination. Mann subsequently received a memorandum on May 27 from Darsh Desai, C & D's general manager, criticizing his "thought processes" and "interaction with fellow employees." On June 8, 1998, C & D terminated Mann, allegedly because his position was eliminated.

C & D attacks both the legal and factual sufficiency of the evidence supporting the jury's finding that Mann was terminated in retaliation for filing a worker's compensation claim, as well as the amount of actual and compensatory damages awarded. C & D also challenges the jury's finding of malice and its finding of exemplary damages.

When both legal and factual insufficiency grounds are raised, we review the legal sufficiency point first to determine whether there is any probative evidence to support the jury's verdict. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401(Tex.1981). The traditional legal sufficiency or no-evidence test requires us to consider only the evidence favorable to the verdict, disregard all evidence and inferences to the contrary, and determine whether any probative evidence exists to support the verdict. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 51 (Tex.1997); *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326–27 (Tex. 1993); *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If more than a scintilla of evidence supports the jury's finding, the no-evidence challenge fails. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to

---

4. This hampered Mann's ability to communicate with Kemper regarding his claim because Kemper's hours of operation coincided with Mann's working hours.

5. Yennie became the human resources director for C & D.

6. The contested case hearing took place on April 29, 1998.

prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970).

▉ To prove a violation of the anti-retaliation statute, a plaintiff-employee must demonstrate a causal link between his discharge and his filing of a claim for worker's compensation benefits. *Metal Indus., Inc. of California v. Farley*, 33 S.W.3d 83, 86 (Tex.App.—Texarkana 2000, no pet.); *Garcia v. Allen*, 28 S.W.3d 587, 600 (Tex.App.—Corpus Christi 2000, pet. denied). This causal connection is an element of the employee's prima facie case and may be established by either direct or circumstantial evidence. *McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 697 (Tex. App.—Fort Worth 1998, no pet.); *Duhon v. Bone & Joint Physical Therapy Clinics*, 947 S.W.2d 316, 318 (Tex.App.—Beaumont 1997, no writ). C & D contends there was no direct evidence of such a causal link and that the circumstantial evidence amounts to no evidence at all.

The standard of proof for retaliatory discharge is set out in *Cont'l. Coffee Prods. v. Cazarez*, 937 S.W.2d 444 (Tex.1996). In *Continental Coffee*, the Texas Supreme Court held that the standard of proof in whistleblower and similar cases was that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did. *Id.* at 450, *quoting Texas Dep't. of Human Servs. v. Hinds*, 904 S.W.2d 629 (Tex.1995). Additionally, finding that similar cases included actions under the anti-retaliation statute, the court discussed how to prove a violation in a circumstantial evidence case, stating:

"Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex. App.—Fort Worth 1993, writ denied); (*Montes*, 821 S.W.2d at 694–95; *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d at 658)".

*Id.* at 451.

▉ With respect to the five-pronged test articulated in *Continental Coffee*, Mann's testimony at trial, together with the testimonies of C & D's president, Charles Davis, human resources director, Michael Yennie, and C & D general manager, Darsj Desai, provides more than a scintilla of evidence to support the jury's verdict as to causation. With respect to point (1), it is undisputed that C & D's managers were aware of Mann's worker's compensation claim. Yennie was initially informed of the situation by his predecessor, Webb. Additionally, Yennie apparently had some heated discussions with Mann over C & D's position on his worker's compensation claim.[7] Regarding point (3), there was testimony from Desai that C & D had a policy of strict neutrality when it came to workers' compensation issues. Desai further testified that, regarding workers' compensation, "we are not the decision maker .... our role is to follow the law and provide whatever information

---

7. While testifying, Desai referred to these discussions as "altercations."

we are supposed to give [to the insurance company]." Additionally, shortly after Mann's contested case hearing, and while he was still undergoing physical therapy, Davis ended the company's policy of reimbursing injured employees for time lost while attending physical therapy sessions. Moreover, according to Mann, Yennie took an adversarial role against him at the hearings before the Texas Workforce Commission, sitting with and advising the lawyers for Kemper. Yennie also barred Mann from accessing his files during his dispute with Kemper.[8] Finally, with regard to point (5), Mann presented evidence that C & D's purported reason for his discharge was false. Although C & D contends that Mann was terminated because his job was eliminated and there were no other positions for which he was qualified, there was ample testimony indicating that Mann's position was not eliminated, but rather was simply merged into another department. At the June 8 termination meeting, Mann pleaded for another position at C & D, but was told there were no other jobs for which he was qualified.[9] The record also indicates that additional employees were hired by C & D shortly after Mann's termination. All of this tends to belie C & D's contention that Mann was terminated because his position was eliminated in the interest of saving the company money.

The testimony discussed above furnishes a reasonable basis for differing conclusions concerning whether Mann was terminated due to retaliation for filing a worker's compensation claim. Moreover, considering the divergent testimonies of Yennie and Desai on the question of when the termination discussion first took place,[10] and the May 27 memorandum criticizing Mann's thought processes and inability to interact with his coworkers, there is some evidence to support a finding of retaliatory discharge.

 C & D also contends that the jury's finding of a causal link between Mann's termination and his worker's compensation claim is contrary to the great weight of the evidence. The standard for a factual sufficiency review requires us to review all the evidence, both favorable and unfavorable to the jury's verdict, and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Although we are required to review all the evidence, we may not interfere with the jury's resolution of conflicts in the evidence. *See Am.'s Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 628–29 (Tex.App.—San Antonio 1996, writ denied); *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 594 (Tex.App.—San Antonio 1990, writ denied). Where conflicting evidence is presented, the jury's verdict on such matters is generally considered to be conclusive. *See Montgomery Ward v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947).

8. Yennie, however, provided Kemper with information from Mann's files from time to time.

9. Desai further testified that Mann was not offered the minimum wage clerk's position and admitted, after equivocating, that Mann was qualified for that job.

10. Yennie testified that he met with Davis and Desai approximately three weeks before the June 8 termination to discuss Mann's "possible termination." However, Desai testified that there was no "specific" discussion about Mann's termination before June 8. Desai further testified that "... even I was not knowing that his job would terminate-occur June 9th."

■ Viewing the evidence in a neutral light, as we are required to do for factual sufficiency challenges, we find the evidence factually sufficient. First, there were various testimonial contradictions the jury was entitled to weigh, particularly the disagreement between Yennie and Desai as to when any discussions began about terminating Mann. Yennie indicated that such a discussion took place three weeks before the actual termination, whereas Desai testified that no such discussion took place until the day Mann was terminated. Additionally, the memorandum Desai sent to Mann dated May 27 tends to belie his testimony that no termination discussions occurred before June 8. Moreover, there is ample evidence in the record suggesting that C & D took an active role in Mann's worker's compensation claim, which is inconsistent with its policy of strict neutrality. There is testimony from Yennie regarding some "interesting" information he found in Mann's employee file, which he forwarded to Kemper Insurance.[11] There is also evidence that Yennie took an adversarial role against Mann at one of his hearings before the Texas Workforce Commission.[12] Yennie also submitted a less than accurate job description to Kemper regarding Mann's actual position at C & D, which may have affected their coverage of his claim.[13] Accordingly, we find that the jury's finding of a causal link between Mann's termination and his work-er's compensation claim is not against the great weight of the evidence.

■ C & D also challenges the legal and factual sufficiency of the evidence supporting the compensatory damages found by the jury. C & D contends that the back pay award of $40,000.00 should be modified in light of the evidence indicating that Mann only made $25,000.00 per year before his injury. Additionally, C & D contends there is no evidence that Mann would have ever made as much as $40,000.00. We disagree. Mann's Social Security records indicate that he earned $30,426.73 the year before his injury. In monthly increments, Mann made $2,535.56 per month, which when multiplied by the sixteen and one-half months he was unemployed, from the date of termination to the date of trial, equals $41,836.75. Accordingly, we find sufficient evidence to support the court's award of $40,000.00, after reducing the jury's award.

■ The jury also found that Mann was entitled to $75,000.00 for "future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages." C & D contends that this finding is unreasonable, but it proffered no evidence at trial to rebut Mann's testimony that he was "devastated," "depressed," and that he "felt humiliated because he let his wife down" as a result of

11. When pressed on this point, Yennie testified that the use of the word "interesting" was a poor choice and that he did not know what he meant by it. From reading the record, one thing to which Yennie could have been referring was the fact that Mann had previously been prohibited from calling Kemper during working hours as per the previous C & D management.

12. In addition to sitting with Kemper at the Texas Workforce Commission hearing and writing notes to the representatives about Mann, Yennie also provided Kemper with in-formation from Mann's employee file, while at the same time prohibiting Mann's access to that file. The record contains handwritten notes written by Yennie to Kemper representatives referring to, among other things, the fact that Mann used to lift weights.

13. The information provided to Kemper excluded some items that Mann performed as a robotics mechanic. Apparently, the information described Mann's job functions as those of a general mechanic.

his termination. There was also testimony that Mann and his wife had just purchased a home before he was terminated, and they were expecting a baby. Moreover, Mann testified that he "could take a lot of things. But how [the termination] affects my family, I can't take that well." It is clear from the record that the termination weighed heavily on Mann's mind and adversely affected his mental well-being. Emotional pain, mental anguish, and inconvenience are difficult to quantify in monetary terms. The jury has broad discretion to assign a specific dollar amount to compensate a person for these kinds of damages. We find that the evidence supporting these elements is legally and factually sufficient to support the jury's finding of $75,000.00 in damages. Accordingly, we find the jury's compensatory damages award to be both reasonable and supported by legally and factually sufficient evidence.

We now turn to the jury's finding of malice, as well as its finding of $250,000.00 in exemplary damages. C & D argues that the evidence is legally and factually insufficient to support a finding of malice necessary to award exemplary damages. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 1997). The jury was asked whether it found that the harm to Mann resulted from actual malice.[14] Although the jury found that C & D had acted maliciously and assessed exemplary damages against it, indicating that the jury considered C & D's actions to be unlawful or wrongful, "the fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages." *Cont'l. Coffee Prods. v. Cazarez*, 937 S.W.2d at 454.[15] To be malicious, the act not only must be unlawful, but it must also be of a wanton and malicious nature, or somewhat of a criminal or wanton nature. Whereas every tort involves conduct that the law considers wrong, punitive damages are proper only in the most exceptional of cases. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994).

The question before us is whether there is sufficient evidence of actual malice to support the jury's finding and its assessment of $250,000.00 in exemplary damages against C & D. After carefully reviewing the record, we find no evidence of ill will, spite, evil motive, or a specific intent to harm Mann. Although there is some evidence that C & D terminated Mann because of his worker's compensation claim, C & D's conduct does not rise to the level of egregiousness for which exemplary damages are appropriate in a retaliatory discharge case.

Mann points to several facts he contends show malice: C & D's personnel manager telling Mann, "You're not going to get your money"; another manager's statement to Mann that he did not feel that Mann deserved his benefits; C & D's management criticizing Mann's thought processes; C & D's manager saying that Mann was not a team player; C & D's decision to rescind its policy of reimbursing injured employees for lost time while undergoing physical therapy, in response to Mann's specific situation; escorting Mann off the premises

14. Actual malice was defined as "ill will, spite, evil motive, or purpose to injure another." *See Cont'l. Coffee Prods. v. Cazarez*, 937 S.W.2d at 452, *quoting Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969). Additionally, there was no instruction on the "clear and convincing" standard required by TEX. CIV. PRAC. & REM.CODE ANN. § 41.003; however, since C & D did not raise this issue in their briefs, we do not address it.

15. The court also announced that "punitive damages are appropriate only for egregious violations of the anti-retaliation statute." *Cont'l. Coffee Prods. v. Cazarez*, 937 S.W.2d at 454.

when he was terminated; and C & D's obstinate refusal to consider Mann for any other job at C & D after his termination.

All of these acts, however, are merely evidence of the wrongful and retaliatory motive for his termination. They do not show any animosity toward Mann personally, and they do not show any desire to injure him in any way except by terminating his employment. The Texas Supreme Court has made it clear that the heightened conduct necessary for the award of punitive damages in anti-retaliation cases may not be found from the employer's intentional wrongdoing in terminating the employee. Therefore, we conclude there is no evidence to support the jury's finding that C & D acted with the kind of malice necessary to support punitive damages in a retaliatory discharge case. Accordingly, we reverse the exemplary damages award and render a take-nothing judgment against Mann on exemplary damages.

Finally, C & D challenges the propriety of the trial court's award of prejudgment interest. C & D contends that the trial court erred by failing to segregate past and future damages in its total actual damages award of $115,000.00, and requests a reduction in the $18,674.11of prejudgment interest calculated by the trial court. C & D relies on *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), where the Texas Supreme Court held that prejudgment interest is limited to accrued damages and is not allowed on future damages. *Id.* at 556. However, in 1987, *Cavnar* was superseded in part when the Legislature expressly provided by statute for prejudgment interest when it enacted TEX. REV.CIV. STAT. ANN. art. 5069–1.05, § 6(a).[16]

---

16. In 1997, the Legislature repealed Article 5069–1.05, replacing it with TEX. FIN.CODE ANN.

In *C & H Nationwide v. Thompson,* 903 S.W.2d 315 (Tex.1994), the Texas Supreme Court expressly held that the Legislature did not intend to segregate past and future damages in the award of prejudgment interest, and held that Article 5069 1.05, § 6(a) modified *Cavnar* to allow prejudgment interest on future damages. Accordingly, since the enactment of the prejudgment interest statute, there is no longer a necessity to segregate past and future damages. *Missouri Pacific R.R. Co. v. Lemon,* 861 S.W.2d 501 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd by agr.). In *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587 (Tex.App.—Texarkana 1992, writ denied), we held that the statute requires awarding prejudgment interest to the full amount of the judgment whether or not damages are segregated.

For the reasons stated, we reform the trial court's judgment to eliminate the award of exemplary damages. As reformed, the judgment is affirmed.

§ 304.101 (Vernon Supp.2001).