# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00501-CV

**William Paul Serur, Appellant**

**v.**

**Churchill Forge Properties, a/k/a C F Management-Texas; Churchill Forge, Inc.; Churchill Forge Management, Inc.; and Churchill Forge Oak Springs Apts., Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN202274, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant William Paul Serur brought three claims in district court against Churchill Forge, his former employer: (1) a retaliatory discharge claim for filing a workers' compensation claim; (2) a retaliatory discharge claim for taking leave under the federal Family Medical Leave Act (FMLA)[1]; and (3) a breach-of-contract claim on the dispersal of his 401(k) funds. Churchill Forge

---

[1] Employers must grant an eligible employee up to a total of twelve work-weeks of unpaid leave during any twelve-month period for one of the following reasons: for the birth and care of the newborn child of the employee; for placement with the employee of a son or daughter for adoption or foster care; to care for an immediate family member (spouse, child, or parent) with a serious health condition; or, to take medical leave when the employee is unable to work because of a serious health condition. *See* Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 (2001).

filed a motion for summary judgment, which the district court granted. This appeal concerns two issues: the granting of summary judgment in favor of Churchill Forge on all of Serur's claims and the overruling of objections made by Serur to some of Churchill Forge's evidence presented in its summary-judgment motion. We affirm the judgment of the district court.

## BACKGROUND

Churchill Forge[2] is a property management company specializing in apartment homes. From April 1990 until July 2001, Serur worked as a rehabilitation coordinator specialist for Churchill Forge, providing maintenance services and construction repair, and renovating properties owned by Churchill Forge in Austin and San Antonio. Serur claims that, as a result of the exposure to toxic mold at work, he suffers from tinnitus, skin fungus, fibromyalgia, fibromyositus, cognitive disorder, vertigo, allergic rhinitis, depression, high blood pressure, and tension anxiety.

Serur began taking days of sick leave on July 9, 2001, to undergo medical testing. His physician wrote a letter to Churchill Forge on July 18, stating that Serur was undergoing evaluation for mold exposure and should not be working. Serur continued to take paid sick leave. After Serur had used all his sick days, Churchill Forge placed him on paid vacation time. On August 6, Serur's physician sent another note to Churchill Forge stating that Serur was unable to return to

---

[2] When Serur last worked in July 2001 he was employed by CF Management Texas. Churchill Forge Properties and CF Management Texas are the same business entity. It is unclear from the record how all of the other Churchill Forge entities are related. Because both parties agree that they are related and that they are aligned on the issues, we will refer to the appellees collectively as "Churchill Forge."

work and that it was unknown when he would be able to return to work in the future. Two days later, Serur signed an application for workers' compensation benefits and asked Churchill Forge to place him on FMLA leave. Churchill Forge sent Serur a letter dated September 27, stating that his FMLA leave began that day and lasted for twelve weeks. In a follow-up letter on October 18, Churchill Forge requested that Serur provide medical documentation of his condition. This letter again reminded Serur of the effective date of his FMLA leave. Serur complied with the records request, and around that same time he submitted an application for long-term disability benefits.

Churchill Forge tried to contact Serur by phone on December 19 to discuss the end of his FMLA leave. It is undisputed that Churchill Forge's Human Resources Director, Cheryl Mills, spoke with Serur on the phone on December 21 and informed him that his FMLA leave ended at that time. Serur suggested that he would not be able to return to work because of his poor health and expressed concerns over maintaining insurance coverage and receiving long-term disability benefits. Mills followed up the telephone conversation with a letter dated December 21, reminding Serur that his FMLA leave expired that day. The letter also requested that Serur get a medical release form from his doctor before returning back to work. Churchill Forge did not hear from Serur for nineteen days after the phone call on December 21.

On January 9, 2002, Cheryl Mills informed Serur by letter that Churchill Forge considered him terminated because he never reported back to work. On January 23, Serur returned to Churchill Forge some work-related items, such as his company pager, and submitted his first COBRA payment to continue his insurance coverage. Serur also requested information on how to cash-out his 401(k) account. Serur does not contend that he asked for his job back or attempted to

3

return to work. He withdrew his workers' compensation claim in May 2002. Churchill Forge's disability carrier denied his application for long-term disability benefits.[3]

Serur filed suit against Churchill Forge on July 15, 2002, alleging that Churchill Forge fired him in retaliation for filing a workers' compensation claim or, in the alternative, in retaliation for going on FMLA leave. *See* Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 (2001); Tex. Lab. Code Ann. § 451.001 (West 1996). Serur also brought a breach of contract action regarding his 401(k) benefits, which he claims were not timely distributed to him resulting in a loss of some of the benefits. Churchill Forge filed a motion for summary judgment arguing that there was no evidence of a causal relationship between Serur's termination and his filing of a workers' compensation claim or exercising his FMLA rights and that there were legitimate bases for his termination. Additionally, Churchill Forge argued that Serur's breach-of-contract claim failed because it was preempted by ERISA,[4] and further, that it had fully complied with the terms of the 401(k) plan. The district court overruled Serur's objections to some of Churchill Forge's summary-

---

[3] Although he requested a reconsideration of his claim, he was informed in May 2002 that the denial had been upheld.

[4] The Employee Retirement Income Security Act of 1974 (ERISA) is a federal law that sets minimum standards for most voluntarily established pension and health plans in private industry. ERISA requires plans to provide participants with plan information including information about plan features and funding, provides fiduciary responsibilities for those who manage and control plan assets, requires plans to establish a grievance and appeals procedure for participants to get benefits from their plans, and gives participants the right to sue for benefits and breaches of fiduciary duty. *See* 29 U.S.C. §§ 1001-1461 (2002).

judgment evidence and granted summary judgment in favor of Churchill Forge. This appeal followed.

## DISCUSSION

Serur presents two issues on appeal. First, he argues that the district court erred in granting Churchill Forge's motion for summary judgment. Second, he asserts the trial court erred in allowing some of Churchill Forge's summary-judgment evidence. We will address each in turn.

### Summary Judgment

In his first issue, Serur argues that the district court erred in granting Churchill Forge's summary-judgment motion.

For all Serur's claims, Churchill Forge sought both traditional summary judgment and no-evidence summary judgment. The standards for reviewing traditional summary judgments are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by jury but to eliminate patently unmeritorious claims and defenses. *Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex. 1972). Summary judgment is affirmable on

5

appeal if any ground asserted in the motion for summary judgment is valid. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex. 1996). Thus, a party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 233 (Tex. 1999); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996).

A no-evidence summary judgment is properly granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). Thus, a no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart,* 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (citing *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied)). Our task is to determine whether the plaintiff has produced any evidence of probative force to raise fact issues on the material questions presented. *See Jackson*, 979 S.W.2d at 70. We must consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Havner*, 953 S.W.2d at 711.

Where the trial court does not specify the grounds on which summary judgment is based, we must affirm if any theories advanced in support of summary judgment are meritorious. *See Dow Chem. Co., v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

6

*Workers' Compensation Claim*

The first claim on which Churchill Forge sought summary judgment is the workers' compensation retaliatory-discharge claim. *See* Tex. Lab. Code Ann. § 451.001. The district court did not state whether it was granting summary judgment based on the traditional or the no-evidence motion. We will begin with a consideration of the no-evidence motion for summary judgment. *See Francis*, 46 S.W.3d at 242.

Section 451 of the Texas Labor Code prohibits an employer from discharging an employee for filing a workers' compensation claim in good faith. *See* Tex. Lab. Code Ann. § 451.001. The purpose of this section is to protect persons entitled to benefits under the workers' compensation act and to prevent them from being discharged for filing claims to collect those benefits. *Trico Tech. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997). Thus, the section has both remedial and deterrence objectives. *See id*. An employee can recover damages for retaliatory discharge under this provision only if he proves that without his filing a workers' compensation claim, the discharge would not have occurred when it did. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In order to make out a *prima facie* claim for retaliatory discharge under the Texas Labor Code, the plaintiff must establish that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. Tex. Lab. Code Ann. § 451.001; *West v. Maintenance Tool & Supply Co.*, 89 S.W.3d 96, 105 (Tex. App.—Corpus Christi 2002, no pet.).

It is undisputed that Serur engaged in a protected activity and that an adverse employment action occurred. *See* Tex. Lab. Code Ann. § 451.001. Therefore, we must only

7

consider the question of a causal connection between participation in the protected activity and the adverse employment decision. *See id.*; *West*, 89 S.W.3d at 105.

The employee has the burden of demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits. *McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 697 (Tex. App.—Fort Worth 1998, no pet.); *Duhon v. Bone & Joint Physical Therapy Clinics*, 947 S.W.2d 316, 318 (Tex. App.—Beaumont 1997, no writ). This causal connection may be established by direct or circumstantial evidence. *McIntyre*, 970 S.W.2d at 697; *Duhon*, 947 S.W.2d at 319. Once the employee has established the causal link, the employer bears the burden to rebut the alleged improper termination by showing there was a legitimate reason behind it. *McIntyre*, 970 S.W.2d at 697-98; *Duhon*, 947 S.W.2d at 319. If an employer is able to demonstrate a legitimate reason for discharge, the employee must produce controverting evidence of a retaliatory motive. *Lozoya v. Air Sys. Components, Inc.,* 81 S.W.3d 344, 348 (Tex. App.—El Paso 2002, no pet.). Evidence sufficient to establish a causal link between the filing of a workers' compensation claim and termination may include: (i) knowledge of the claim by those making the decision to terminate; (ii) expression of a negative attitude toward the employee's injured condition; (iii) failure to follow company policies; (iv) different treatment in comparison to similarly situated employees; and (v) evidence that the stated reason for discharge was false. *Cazarez*, 937 S.W.2d at 451.

Because Churchill Forge filed a no-evidence motion for summary judgment, the burden falls on Serur to produce some evidence of probative force to raise a fact issue of a causal connection. *See Havner*, 953 S.W.2d at 711. The summary-judgment evidence offered by Serur establishes that Churchill Forge's Human Resources Director, Cheryl Mills, knew about Serur's workers' compensation claim during the summer of 2001. Mere knowledge of Serur's claim does

8

not, however, establish a causal link between the alleged discriminatory behavior and the filing of the claim. Rather, it is only one factor to be considered in light of the record as a whole. *See Cazarez*, 937 S.W.2d at 451; *Lone Star Steel Co. v. Hatten*, 104 S.W.3d 323, 327-28 (Tex. App.—Texarkana 2003, no pet.), *Vallance v. Irving C.A.R.E.S., Inc.*, 14 S.W.3d 833, 837 (Tex. App.—Dallas 2000, no pet.). Thus, we must consider other factors of the *Cazarez* test in order to determine if Serur met his burden. *See Hatten*, 104 S.W.3d at 327-28.

In relation to the second factor, an expression of a negative attitude, Serur offered the deposition testimony of Frank Resnek, the president of Churchill Forge. He testified that after speaking with Serur about his health conditions, he could tell that Serur "had serious, in my opinion, emotional problems." Resnek drew this conclusion after two phone conversations with Serur, who explained his health problems and his related distress and despair. This evidence does not rise to the level of an expression of a negative attitude toward Serur's condition. *See Cazarez*, 97 S.W.2d at 452 (employer is authorized to obtain information about applicant's prior injuries and to contest alleged on-the-job injuries); *but see Wyler Indus. Works, Inc. v. Garcia*, 999 S.W.2d 494, 501 (Tex. App.—El Paso 1999, no pet.) (negative attitude shown by general manager being annoyed and irritated by employee's inability to perform light-duty work); *Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 666-67 (Tex. App.—Corpus Christ 1997, pet. withdrawn) (negative attitude shown by forcing workers' compensation claimant to suffer humiliation not inflicted on other employees). Without more, we cannot conclude that Frank Resnek expressed any attitude, negative or positive, regarding Serur's condition. *See Cazarez*, 937 S.W.2d at 452 (employee's subjective beliefs "are no more than conclusions" and do not raise fact issue precluding summary judgment). In fact, Resnek's lay conclusions correspond to Serur's medical diagnoses of depression and tension anxiety.

9

Serur has not produced any summary-judgment evidence in addition to the comments made by Resnek. Therefore, Serur has not raised a fact issue precluding summary judgment on the second factor.

We now turn to the third factor, whether Churchill failed to follow company policies. The company employee manual expressly provides that absence from work for three consecutive days without notifying a supervisor will be considered a voluntary resignation. An additional section provides that an employee's position will not be held open past the end of the twelve-week maximum leave period.[5] It is undisputed that Serur did not return to work or contact anyone at Churchill within three days of receiving the letter that notified him his FMLA leave had expired. Serur's conduct constituted a violation of Churchill's three-day rule. In addition, he provided no evidence regarding different treatment of other employees under the three day rule. Thus, Serur failed to offer sufficient evidence of the third factor.

As to the fourth factor, the summary-judgment evidence suggests that the extended-leave policy may not have been uniformly applied. *See Bocalbos v. National W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998); *Cazarez*, 937 S.W.2d at 451. However, Churchill Forge also has a three-day absence policy. Because Serur did not show any evidence regarding the three-day rule, violation of this policy is sufficient to justify the termination. *See* Tex. R. Civ. P. 166a(i); *Havner*, 953 S.W.2d at 711.

In relation to the fifth factor, the record is unclear on who made the final termination decision. Serur believes this fact should establish that Churchill Forge's justification is false. A

---

[5] In deposition testimony, Serur acknowledged having a copy of the Churchill Forge employee's manual.

10

plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the court to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). In drawing this conclusion, it is not enough to disbelieve the employer, but a court must believe the plaintiff's explanation. *Id*. at 147. Frank Resnek's deposition testimony shows that he did not terminate Serur's employment himself but that he understood Serur's employment ceased because he was too sick to return to work. Joanie Loughborough, Serur's supervisor, testified in her deposition that Serur was terminated because he did not come back to work or contact Churchill Forge at the end of his leave. Cheryl Mills testified in her deposition and her affidavit that Serur was terminated because he failed to return to work or contact anyone about returning to work for more than three days after his leave expired. Serur's summary-judgment evidence does not raise any issues of fact to suggest that he may have tried to contact Churchill Forge or return to work within three days of the expiration of his FMLA leave. Thus, Serur has not offered any evidence to establish that the given reason for termination is false. *See Cazarez*, 937 S.W.2d at 451.

We have considered all of the factors of the *Cazarez* causality test to determine if Serur met his burden to show more than a scintilla of probative evidence. *See id*.; *Hatten*, 104 S.W.3d at 327-28. We conclude that Serur failed to meet his burden as to the workers' compensation claim. Because Churchill Forge filed a no-evidence summary judgment motion and Serur failed to raise a genuine issue of material fact, the summary judgment stands on those grounds. Tex. R. Civ. P. 166a(i). We affirm the judgment of the district court granting summary judgment for Churchill Forge on Serur's alleged retaliatory discharge for filing a workers' compensation claim.

11

***Family Medical Leave Act Claim***

Serur's second cause of action was a FMLA retaliatory-discharge claim. To establish a *prima facie* case for retaliation under the FMLA, the plaintiff must show that: (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and (3) he either was treated less favorably than an employee who had not requested leave or the adverse decision was made because of the plaintiff's request for leave. *Bocalbos*, 162 F.3d at 383 (5th Cir. 1998). If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the employer to provide a legitimate nonretaliatory reason for the termination. *Id*. Once the employer has done so, the plaintiff must show that the reason is a pretext for retaliation. *Id*.

The requirements for establishing a retaliatory discharge claim under the FMLA, therefore, are similar to those for establishing a workers' compensation retaliatory discharge claim under chapter 451 of the Texas Labor Code. *Compare Bocalbos*, 162 F.3d at 383 (test for FMLA retaliatory discharge claim), *with West*, 89 S.W.3d at 105 (test for Texas workers' compensation retaliatory discharge claim). The third prong of an FMLA claim allows a plaintiff to show either that he was treated less favorably than another employee or that the adverse decision was made because of the plaintiff's request for leave. *Bocalbos*, 162 F.3d at 383. Because these factors are part of what we consider when determining a "causal link," we conclude that the tests for retaliatory discharge under the FMLA and under workers' compensation are functionally equivalent. *Compare Bocalbos*, 162 F.3d at 383, *with Cazarez*, 937 S.W.2d at 451. Our discussion of the workers' compensation claim compels us to find that Serur failed his burden to produce some evidence in support of this claim. Thus, we also affirm the district court's grant of summary judgment in favor of Churchill Forge on Serur's retaliatory discharge claim under the FMLA.

12

*Breach-of-Contract Claim*

Finally, Serur seeks to overturn the grant of summary judgment on the breach-of-contract claim. In particular, Serur argues that Churchill Forge delayed in paying him his 401(k) benefits when requested. During the time period of the delay, the value of his account decreased, and he thus seeks the difference in the value of his account between the time he requested a disbursement and the date of actual disbursement. Churchill Forge argued in its motion for summary judgment that it disbursed his funds in accordance with the ninety-day provisions of the 401(k) Adoption Agreement.

In this issue, Serur only challenges the use of Mills's deposition testimony as not being the best evidence of the Adoption Agreement. He does not argue on appeal that Churchill Forge violated the Adoption Agreement. However, before the summary-judgment hearing and without objection from Serur, Churchill Forge supplemented its motion with a second affidavit from Mills and a copy of the Adoption Agreement. A review of the Adoption Agreement reveals that it does not provide for a specific time for the disbursement of 401(k) funds, and the 401(k) plan itself allows for a disbursement within ninety days of request if the Adoption Agreement does not provide for a different time period. It is undisputed that Churchill Forge disbursed the funds within 90 days of Serur's request. Thus, the district court did not err in granting Churchill Forge's motion for summary judgment on this claim. Tex. R. Civ. P. 166a(c).

We have found that Serur did not meet his burden to show more than a scintilla of probative evidence regarding his workers' compensation and FMLA retaliatory-discharge claims. In addition, we have found no genuine issue of material fact in support of his breach of contract claim. We overrule Serur's first issue.

13

**Objections to Summary-Judgment Evidence**

In Serur's second issue, he objects to statements contained in eleven of Churchill Forge's summary-judgment exhibits as inadmissible hearsay. First, in relation to his retaliatory discharge claims, we have affirmed the grant of summary judgment on no-evidence grounds, and we have not considered the objected-to evidence. Second, in relation to Serur's breach-of-contract claim, we have only relied on the unchallenged evidence of the 401(k) plan and the Adoption Agreement. Serur does not present any evidence to contradict their terms. We overrule Serur's second issue.

## CONCLUSION

Because we overrule Serur's issues on appeal, we affirm the order of the district court granting summary judgment in favor of Churchill Forge on all claims.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 24, 2004

14