In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00108-CV


______________________________




WAL-MART STORES, INC., Appellant



V.



SCOTTIE D. AMOS, Appellee




 


On Appeal from the 62nd Judicial District Court


Lamar County, Texas


Trial Court No. 66959




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Wal-Mart Stores, Inc. appeals the jury's finding that it is guilty of the retaliatory
discharge of Scottie Amos for filing a worker's compensation claim, in violation of the
Workers' Compensation Act. Tex. Lab. Code Ann. § 451.001 (Vernon 1996). The trial
court rendered judgment on the jury's verdict, awarding Amos $129,160.00 in damages,
plus prejudgment and postjudgment interest. Wal-Mart filed a motion for judgment
notwithstanding the verdict and an alternative motion for new trial, which the trial court
denied.

 Wal-Mart contends: (1) there is no evidence, or insufficient evidence, to support the
jury's finding that Wal-Mart discharged Amos because of her worker's compensation claim;
(2) there is no evidence, or insufficient evidence, to support the jury's finding of $88,000.00
in future damages; and (3) there is no evidence, or insufficient evidence, to support the
jury's finding of $41,160.00 in past damages.

 Amos was employed by Wal-Mart as an in-store loss prevention associate from
1993 to 1999. A loss prevention associate's duties primarily involve observing and
apprehending shoplifters. On April 27, 1999, Amos helped the police apprehend a
customer. A scuffle ensued during this incident, and Amos suffered an injury to her
shoulder and wrist. Later that day, Amos filed with the Wal-Mart personnel office a
worker's compensation request for medical care. She then missed seven days of work and
returned May 4, 1999. Although on "light duty," Amos performed all tasks associated with
her job without difficulty, including apprehending shoplifters. 

 Sometime in April 1999, Amos told her supervisor, Lawrence Ashford, of an incident
where she had almost been caught by a customer while spying on the customer with a
mirror while the customer was in a fitting room. Ashford admonished Amos that Wal-Mart
did not condone such practices and that she should never do this again.

 On May 13, 1999, Ashford learned of another incident involving Amos. On this date,
Lori Bramlett, also a Wal-Mart employee, informed Ashford that she (Bramlett) went into
the store restroom, and while seated in the stall, looked up and saw Amos looking over the
partition at her. Amos had stood on the toilet in the adjacent stall to peer over the partition. 
Amos admitted this incident occurred, but explained that she was told a shoplifting suspect
had entered the restroom and that she peered over the partition to determine the stall into
which the suspect had gone. According to Amos, this incident occurred in February 1999. 
Bramlett contends it occurred later than February, but was unable to remember the exact
date. It is uncontested that Ashford did not learn of the incident until May 1999 and that
he understood the incident had recently occurred.

 After investigating the restroom incident, Ashford decided to terminate Amos. 
Although approval of such termination by the store manager, Linda Tosh, was not required,
Ashford consulted with Tosh, and she agreed with his decision. On May 17, 1999, Amos
was terminated for "Serious Inappriate [sic] Conduct." Tosh was present when Ashford
terminated Amos, and Tosh signed the exit interview form as a witness.

 Amos' injury deteriorated, and Joseph Greenspan, M.D., began treating her about
a year after her injury. Greenspan testified Amos could only "perform vocational tasks
involving observation or walking around. Certainly nothing involving manual dexterity or
bimanual movements." Amos testified she applied for some jobs, but potential employers
"won't accommodate my arm and any kind of stipulations to my light duty or anything." 
Amos testified she is unable to perform convenience store work or clerical work. 

 Section 451.001 of the Texas Labor Code provides that "[a] person may not
discharge or in any other manner discriminate against an employee because the employee
has . . . filed a workers' compensation claim in good faith." Tex. Lab. Code Ann.
§ 451.001(1). The burden of proof is on the employee to demonstrate the causal link
between the discharge and the filing of the claim, an element of a prima facie case for
retaliatory discharge. Tex. Lab. Code Ann. § 451.002(c) (Vernon 1996); see Garcia v.
Allen, 28 S.W.3d 587, 600 (Tex. App.-Corpus Christi 2000, pet. denied). The employee
must prove that, but for the filing of the worker's compensation claim, the discharge would
not have occurred when it did. See City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex.
2000); (1) Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). An
employee can meet this burden without showing discrimination occurred against the
employee solely because of the filing of a worker's compensation claim; however, the
employee must show the filing of the claim was at least a determining factor in the
discriminatory conduct. Terry v. S. Floral Co., 927 S.W.2d 254, 257 (Tex. App.-Houston
[1st Dist.] 1996, no writ); see Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 665-66
(Tex. App.-Corpus Christi 1997, no pet.). This causal connection may be established by
direct or circumstantial evidence and by reasonable inferences arising from such evidence. 
See Garcia, 28 S.W.3d at 600. An employee cannot prevail on a claim of retaliatory
discharge if the employer can establish that the reason for the employee's discharge or
other adverse treatment was not due to the employee's filing of a worker's compensation
claim, but rather due to a neutrally-applied policy. Fenley v. Mrs. Baird's Bakeries, Inc., 59
S.W.3d 314, 321 (Tex. App.-Texarkana 2001, pet. denied).

 Wal-Mart contends the limited circumstantial evidence submitted by Amos does not
rise to the level of being more than the scintilla of evidence required to prove a prima facie
case. It also contends that all the evidence, considered as a whole, shows by a great
weight and preponderance of the evidence that no retaliatory discharge occurred. 
Wal-Mart contends Amos was fired because she violated Wal-Mart policy in looking over
the restroom stall, not because she filed a worker's compensation claim.

 When there is an absence or mere scintilla of evidence to support a jury's findings,
a no-evidence point should be sustained. Provident Am. Ins. Co. v. Castaneda, 988
S.W.2d 189, 206 (Tex. 1998). Appellate courts reviewing no-evidence complaints may
consider only the evidence and inferences that tend to support the finding and must
disregard all contrary evidence and inferences. Cazarez, 937 S.W.2d at 450; Brown v.
Edwards Transfer Co., 764 S.W.2d 220, 223 (Tex. 1988); Holley v. Adams, 544 S.W.2d
367, 370 (Tex. 1976). Anything more than a "scintilla of evidence" is legally sufficient to
support the jury's finding. Cazarez, 937 S.W.2d at 450. To be more than a scintilla, the
evidence must rise "to a level that would enable reasonable and fair-minded people to
differ in their conclusions." Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994).

 "Where circumstantial evidence is relied upon, and the circumstances are equally
consistent with either of two facts, however, no more than a scintilla of evidence supports
a finding and a 'no evidence' point must be sustained." Cazarez, 937 S.W.2d at 450; see
also Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex. 1984). When the
evidence offered to prove a fact is so weak as to do no more than create a mere surmise
or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect,
is no evidence. C & D Robotics, Inc. v. Mann, 47 S.W.3d 194, 197-98 (Tex.
App.-Texarkana 2001, no pet.).

 "The equal inference rule provides that a jury may not reasonably infer an ultimate
fact from meager circumstantial evidence 'which could give rise to any number of
inferences, none more probable than another.'" Lozano v. Lozano, 52 S.W.3d 141, 148
(Tex. 2001); see also Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997). 
When circumstantial evidence is relied on for proof of a fact, "the evidence must establish
that it is more likely than not" the fact exists. Cf. Wal-Mart Stores, Inc. v. Gonzalez, 968
S.W.2d 934, 936 (Tex. 1998) (a slip and fall case). The circumstantial evidence must show
more than the "possibility" of the fact. Id.

 In reviewing a point of error claiming the evidence is factually insufficient to support
the jury's answer to a question, the appellate court considers all of the evidence, including
evidence contrary to the jury's verdict. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
445 (Tex. 1989); Southwestern Elec. Power Co. v. Martin, 844 S.W.2d 229, 233 (Tex.
App.-Texarkana 1992, writ denied). The appellate court then determines "whether the
verdict is so against the great weight and preponderance of the evidence as to be
manifestly wrong or unjust." Mann, 47 S.W.3d at 199 (citing Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996), and Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)). In reviewing
all the evidence, the appellate court "may not interfere with the jury's resolution of conflicts
in the evidence." Mann, 47 S.W.3d at 199.

 Where both legal (or no evidence) and factual sufficiency grounds are raised, we
consider the no-evidence point first "to determine whether there is any probative evidence
to support the jury's verdict." Id. at 197 (citing Glover v. Tex. Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981)).

LEGAL SUFFICIENCY

 There is no question in this case that Amos filed a worker's compensation claim.
Wal-Mart's first issue is there is no evidence to support the jury's finding that Wal-Mart
discharged Amos because of that claim. 

 In order to prevail under Section 451.001, the employee is required to prove, as part
of the prima facie case, a causal link between the filing of the worker's compensation claim
and the discharge. Metal Indus., Inc. v. Farley, 33 S.W.3d 83, 86 (Tex. App.-Texarkana
2000, no pet.). Unless the filing of the worker's compensation claim was the motivating
factor in discharging Amos, she cannot prevail on a claim based on retaliatory discharge
in violation of the Workers' Compensation Act. Fenley, 59 S.W.3d at 319. The standard
of proof in retaliatory discharge cases is "that the employee's protected conduct must be
such that, without it, the employer's prohibited conduct would not have occurred when it
did." Mann, 47 S.W.3d at 198. Amos must prove that, had she not filed a worker's
compensation claim, she would not have been discharged. See Tex. Lab. Code Ann.
§ 451.002(c) ("The burden of proof in a proceeding under this section is on the
employee.").

 Amos relied on circumstantial evidence and did not produce any direct evidence. 
Circumstantial evidence that may show this causal link includes: (1) knowledge of the
compensation claim by those making the decision on termination; (2) expression of a
negative attitude toward the employee's injured condition; (3) failure to adhere to
established company policy; (4) discriminatory treatment in comparison to similarly situated
employees; and (5) evidence that the stated reason for the discharge was false. Mann,
46 S.W.3d at 198. Once the employee has established the link, it is the employer's burden
to rebut the alleged discrimination by showing there was a legitimate reason behind the
discharge. Dallas County v. Holmes, 62 S.W.3d 326, 329-30 (Tex. App.-Dallas 2001, no
pet. h.); Hughes Tool Co. v. Richards, 624 S.W.2d 598, 599 (Tex. Civ. App.-Houston [14th
Dist.] 1981, writ ref'd n.r.e.). 

Knowledge of the Compensation Claim by 

Those Making the Decision on Termination


 There is evidence showing knowledge of the compensation claim by Ashford, who
made the decision to terminate Amos. Tosh testified both she and Ashford knew on
May 17, 1999, the date of termination, that Amos had filed a worker's compensation claim. 
Ashford knew of the injuries within days of the accident. 

Expression of a Negative Attitude 

Toward the Employee's Injured Condition


 Wal-Mart's manual for store managers directs them to:

 [A]ttempt to return associates injured on the job to work as quickly as
possible by making a modified work schedule available to the treating
physician and the associate we can reduce cost associated with accidents
as much as $7,000. In addition, accident reporting, continued, begin the
follow up with your injured associate, contact the associate every day for the
first seven days and every two weeks thereafter until a return to modified
work is accomplished. 


 Amos contends the fact that Wal-Mart requires its store managers to contact an
injured employee every day for the first seven days the employee is off work is evidence
of a negative attitude toward her injury. We disagree. Wal-Mart's communications with
its injured employees are legitimate. An employer may monitor an employee out on
worker's compensation. Cazarez, 937 S.W.2d at 452. Further, there is no evidence Tosh
or any Wal-Mart employee contacted Amos on a daily basis while she was out on worker's
compensation for her April 27 injury. We hold that this store policy is no evidence of a
negative attitude toward Amos' injured condition.

 Amos presented no evidence that her supervisor, Ashford, expressed a negative
attitude toward her injuries. She does point to evidence which she contends shows a
negative attitude on the part of Tosh, the store manager. Although Tosh had no authority
to fire Amos, she did approve of Ashford's decision to terminate and was present when
Ashford told Amos she was terminated. Tosh also signed the exit interview form as a
witness.

 We look at the evidence related to Tosh because comments made by others may
provide some evidence of discriminatory intent if they are: (1) related to the protected
class of persons of which the plaintiff is a member; (2) proximate in time to the termination;
(3) made by individuals with authority over the employment decision; and (4) related to the
employment decision at issue. Medina v. Ramsey Steel Co., 238 F.3d 674, 683 (5th Cir.
2001); Wal-Mart Stores, Inc. v. Bertrand, 37 S.W.3d 1, 10 (Tex. App.-Tyler 2000, pet.
denied). Mere stray remarks, however, are typically insufficient to show discrimination. 
M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 25 (Tex. 2000).

 Amos points to the fact that, when she was out on worker's compensation in 1997,
Tosh called her at home and told her that, if she did not return to work immediately, drastic
measures would be taken. Tosh denied the statement, claiming she did contact Amos
during her absence, but only because Amos did not return by the date her doctor had given
and because Amos needed to provide another doctor's statement regarding when she
could return to work. 

 Taking Amos' testimony regarding Tosh's statement made in 1997 as true, we note
that Amos did not lose her job at that time, but continued working for Wal-Mart and
received good evaluations and earned awards. Further, because this was a comment
made by another, not Amos' immediate supervisor, we must look at whether the comment
was (1) related to the protected class of persons of which the plaintiff is a member; (2)
proximate in time to the termination; (3) made by individuals with authority over the
employment decision; and (4) related to the employment decision at issue. Medina, 238
F.3d at 683; Bertrand, 37 S.W.3d at 10. 

 This comment, made in 1997, while made by a person who had an input in Amos'
termination, was made by one who lacked authority to terminate her and whose approval
for such termination was not required. Further, Tosh's comment clearly was not related
to the employment decision at issue in 1999. We find Tosh's statement made in 1997 is
no evidence of a negative attitude toward Amos' injured condition. 

 Amos also relies on statements made by Tosh during her deposition to show she
had a negative attitude toward Amos' worker's compensation claims. During the
deposition, Tosh was asked the following question: "Did you ever express to anybody any
concerns about Ms. Amos' workers' compensation absences or claims?" Tosh's response
was: "Not about her claims. I was just worried about her - she was going to hurt herself
really serious one of these days." This testimony, rather than showing a negative attitude
toward Amos' claim, reveals Tosh was concerned about whether Amos would hurt herself
seriously. The record fails to show when this concern was voiced, in what context, or to
whom it was made. Tosh's other testimony cited by Amos is as follows:

 Q. . . . . You were talking about you had talked to Mr. Ashford
about the need to get a second loss prevention associate in your store?



 Yes.



 Q. I guess this was after or during one of Ms. Amos' absences due
to an on-the-job injury?


 A. Yes.


 Q. Did you remember -- was that the one she had immediately
before she had the one on 4-27?


 A. Yes. Yes.


 Q. That would have been, I think, the one that -- she had one in
'98, sometime in '98?


 A. Yes.


 Q. And I mean, at this point in time you knew Scottie had a
propensity -- I guess, for lack of a better word, to injure herself when she
would get involved in these store apprehensions and things; is that correct?


 A. Yes.


 Q. And that was your problem. I mean, you were concerned. You
knew she had that propensity and you needed somebody to be the loss
prevention control person?


 A. I just needed loss prevention in the store at all times.


 Q. And to the extent she was absent on a workers' comp claim --
or workers' comp injury, I should say -- of course, she couldn't function in that
capacity?


 A. Yes.


This testimony likewise does not show a negative attitude toward Amos' injured condition. 
It merely shows that Tosh agreed Amos had a propensity to injure herself and that Wal-Mart needed a loss prevention associate in the store at all times. Because Amos was the
only loss prevention associate Wal-Mart had at the time, it was reasonable for Tosh to
discuss with Ashford the need for another loss prevention associate. This is no evidence
of a negative attitude toward Amos' worker's compensation claim. Amos also points to Wal-Mart's bonus program as evidence of Tosh's negative
attitude toward Amos' claim. Wal-Mart has a bonus program in which store managers
share in profits. Amos contends that, because the formula used in determining profitability
calculates insurance costs as a negative factor, this shows Tosh had a negative attitude
toward Amos' injured condition. We disagree. There is no evidence Ashford benefited
from this plan or that it in any way influenced Tosh when she concurred with Ashford's
decision to discharge Amos. 

 Amos failed in presenting evidence of a negative attitude toward her injured
condition.

Failure to Adhere to Established Company Policy

 In reviewing the third factor, we determine if there is evidence of Wal-Mart's failure
to follow company policy when it terminated Amos. Amos contends Wal-Mart violated its
employee step disciplinary policy when it terminated her. She testified that, when an
employee's performance is less than satisfactory, the employee first receives verbal
coaching for the first infraction, a written coaching for the second infraction, and the
employee is not subject to termination until the fourth infraction. These steps did not occur
in Amos' termination. However, Wal-Mart produced evidence that, in Amos' case, it
followed another company policy which allowed for the immediate termination of
employees. Amos failed to rebut this evidence. 

 Wal-Mart says it fired Amos for rude and abusive behavior toward an employee. 
The employee handbook and Wal-Mart policy state that certain actions of misconduct may
result in immediate termination. This conduct includes, in a nonexclusive list, "[r]ude or
abusive conduct toward a customer or Associate." Ashford considered peering over a
restroom stall rude and abusive behavior, and used this as the basis for terminating Amos
under Wal-Mart policy, as provided in the employee handbook. Amos contends "it is
preposterous to suggest that Amos's conduct was rude or abusive toward Bramlett"
because she apologized to Bramlett who, according to Amos, accepted her apology. Amos
speculates that, if Ashford had sufficiently investigated the incident and learned of the
apology, he could not have found the behavior rude or abusive. But Wal-Mart determines
what it considers rude and abusive behavior, and an apology does not negate the actions
or change the nature of the incident.

 There is no evidence Wal-Mart failed to follow company policy.

Discriminatory Treatment in Comparison 

to Similarly Situated Employees


 Amos contends that Clay Haag, another loss prevention associate, is a similarly
situated employee and that she suffered discriminatory treatment compared to him. Amos
testified Haag made a "bad stop" and was not terminated. A "bad stop" is when an
employee stops a suspected shoplifter but the suspect had no stolen merchandise. Tosh
testified that making a "bad stop" is cause for termination. Tosh further testified she was
aware there was "a problem with at least some of the stops that [Haag] made," but she did
not know if these were "bad stops." 

 The Wal-Mart in-store loss prevention training guide sets out four requirements for
making an apprehension for shoplifting:

 (1) You must see the individual remove Wal-Mart property from the shelf or
sales floor display. You cannot apprehend a suspected shoplifter on another
person's word. You must make certain that the property being removed is
Wal-Mart property.


 (2) You must observe the person take and/or conceal merchandise and know
exactly where it is maintained.


 (3) You must maintain visual sight of the suspect. The suspect must be kept
under complete surveillance from the point of theft to point of apprehension. 
You must be certain that the suspect did not ditch the merchandise on the
way out of the store. You must ensure the individual did not pay for the
merchandise.


 (4) You must allow the individual to exit the store prior to making an
apprehension. This assists in proving the intent of the theft. Allow the
subject to go five or ten feet outside the store's vestibule prior to
apprehending. Remember, the key is to allow the person to pass the last
possible checkout. If your store is having a sidewalk or tent sale, you should
allow the subject to pass these areas of checkout. The same principal [sic]
holds true for the Garden Center and Tire & Lube Express. And remember,
NEVER GO OUT ALONE. You should always have a witness/backup when
making an apprehension.

 

 According to Amos, Haag was not terminated when he violated the third
requirement, while she was terminated for following it. She contends she had to look over
the toilet stall to maintain visual contact with the suspected shoplifter. However, her own
testimony shows she was not following the other requirements of the loss prevention 
training guide. Amos testified she went into the restroom on a tip from the meat manager
that a woman who in the past was suspected of shoplifting meat had entered the restroom. 
Amos did not see this individual remove any Wal-Mart property and did not follow the
woman into the restroom. When she entered the restroom she admitted she was not
maintaining visual contact with the suspect because she had not been following her. She
was looking over the stalls in an attempt to find the suspect. When asked, "Do you think
it would have been okay to look over the top of that bathroom stall if there had been a
customer inside?" she answered, "Yes." She conceded that, were the customer not
shoplifting, she probably would need to apologize. 

 Haag and Amos were two loss control associates who violated Wal-Mart policy. The
policy each violated could have resulted in immediate termination. Because Amos was
terminated and Haag was not, we find some evidence of discriminatory treatment in
comparison to a similarly situated employee.

Evidence that the Stated Reason for the Discharge was False

 Amos advances four arguments to show that the stated reason for her termination
was merely pretextual. First, she contends the fact she was not fired when she told
Ashford about looking into a fitting room with a mirror shows that her discharge for looking
over a toilet stall was a pretext. She contends that, had she been injured before the fitting
room incident, Ashford would have used that as a pretext to terminate her. The evidence
supporting this contention is that Ashford stated he would have terminated Amos over the
restroom incident, even if he thought it occurred before the fitting room incident. But his
testimony reveals he felt the fitting room incident was more severe because it involved a
customer. If he was inclined to fire her for "Serious Inappriate [sic] Conduct," why did he
not fire her over the fitting room incident, which he considered more severe? There is
legally sufficient evidence for the jury to infer that the only difference between the fitting
room incident and the restroom incident was Amos' April 27 injury and the pending
worker's compensation claim. There is more than a scintilla of evidence that the stated
reason for Amos' termination was false.

 Amos also points to her meeting with Ashford the day she was fired as further
evidence that the stated reason for her termination was a sham. She contends that,
because Ashford told Tosh of his intention to fire her before he ever met with her, it shows
he had already made up his mind and, therefore, their meeting was a sham. However, the
fact that Ashford had already decided to fire Amos before meeting with her because of the
restroom incident is not evidence that Ashford had an ulterior motive for firing her. We find
this is no evidence of a false pretext. 

 Third, Amos contends the fact that Ashford persisted in believing the restroom
incident occurred after the fitting room incident, even though Bramlett could not remember
exactly when the restroom incident occurred, and even though she, Amos, told him the
restroom incident occurred first, shows that Ashford was deceptive, and this makes his
stated reason for termination highly suspect. However, it is irrelevant when the restroom
incident occurred; the evidence is uncontested that Ashford did not learn of the incident
until just before he fired Amos and that Ashford told Amos at the time of her discharge it
was not the timing of the incident that mattered, but the fact that it occurred. Whether the
incident occurred in February or April does not make it more likely that he fired her for filing
a worker's compensation claim. 

 Finally, Amos contends the timing of her termination, just twenty days after the date
of her injury, shows the stated reason for termination was false. Although an injury by an
employee, followed closely by termination of that employee, is strong evidence the two
events are related, such circumstance alone is no evidence the stated reason for the
employee's discharge was false. The facts here clearly show that Amos was injured
April 27 and that Ashford did not find out about the restroom incident until May, just days
before he terminated Amos. Nonetheless, the proximity in time of Amos' injury to her
termination is some evidence supporting an inference that her recent worker's
compensation claim was a determining factor in her termination. We hold there is more
than a scintilla of evidence that the stated reason Wal-Mart gave for termination was false.

 Amos presented legally sufficient evidence to support the jury's finding of a causal
connection between the termination and the filing of the worker's compensation claim.

FACTUAL SUFFICIENCY

 As stated, the standard of review for factual sufficiency is "whether the verdict is so
against the great weight and preponderance of the evidence as to be manifestly wrong or
unjust." Mann, 47 S.W.3d at 199 (citing Ortiz, 917 S.W.2d at 772, and Cain, 709 S.W.2d
at 176). In reviewing all of the evidence, the appellate court "may not interfere with the
jury's resolution of conflicts in the evidence." Mann, 47 S.W.3d at 199. In determining
whether there is factually sufficient evidence to support the jury's finding of a causal link,
we need only analyze the elements we found some evidence to support. 

Knowledge of the Compensation Claim by 

Those Making the Decision on Termination


 With regard to the knowledge of the compensation claim by those making the
decision to terminate, the evidence is factually sufficient. Ashford knew of Amos' injuries
within days of the accident. Even though Wal-Mart disputes whether Ashford actually knew
Amos had filed a claim, that is immaterial. Informing Ashford of the on-the-job injury
sufficiently "instituted" a compensation proceeding within the meaning of Section 451.001.
Fenley, 59 S.W.3d at 324; Mid-South Bottling Co. v. Cigainero, 799 S.W.2d 385, 389 (Tex.
App.-Texarkana 1990, writ denied). The evidence is factually sufficient to show Ashford
had knowledge of the worker's compensation claim.

Discriminatory Treatment in Comparison

to Similarly Situated Employees


 Amos testified another loss prevention associate made "bad stops" and was not
terminated and that Wal-Mart's policy is to fire loss prevention associates for making bad
stops. Because this is a challenge to the factual sufficiency of the evidence, we look at all
the evidence, not just that supporting the verdict. Tosh testified she knew Haag had been
called in by his supervisor regarding some problems, but she did not know the nature of
the problems. She also testified it is Wal-Mart's policy to terminate employees for making
bad stops. Although the only evidence presented that Haag made "bad stops" was
presented by Amos, the evidence rebutting this is not overwhelming. When the evidence
is conflicting, we do not substitute our opinion for that of the jury. Mann, 47 S.W.3d at 199. 
The evidence is factually sufficient to show Amos was treated differently than Haag, a
similarly situated employee. 

Evidence that the Stated Reason for the Discharge was False


 The strongest evidence supporting Amos' contention that Wal-Mart's stated reason
for her discharge was false is two-fold: Wal-Mart terminated her for an action similar to
one that previously resulted in only a verbal reprimand, and two similarly situated
employees were treated differently. 

 Ashford testified the only reason he did not fire Amos in April, after the fitting room
incident, was because he had just recently become her supervisor and wanted to give her
leeway because he was new. This explanation is suspect in light of Ashford's other
testimony that he considered the fitting room incident more serious, and considering Wal-Mart's strict policy authorizing immediate termination for such conduct. The jury, as judge
of the credibility of the witnesses, was entitled to disbelieve Ashford's explanation.

 According to Amos, both she and Haag violated Wal-Mart policies authorizing
immediate discharge. She was discharged; Haag was not. Wal-Mart contends an
employee who makes a "bad stop" is not similarly situated with an employee who looks
over a toilet stall. However, Wal-Mart fails to direct us to evidence explaining why Amos
and Haag are not similarly situated. Tosh admitted that there was "a problem with at least
some of the stops that [Haag] made" and that the district manager for loss prevention
associates had spoken with him. It was not against the great weight and preponderance
of the evidence for the jury to consider Amos and Haag similarly situated. 

 In opposition to Amos' contention that Wal-Mart's stated reason for her discharge
was false, there is evidence Amos had filed previous worker's compensation claims and
had not suffered an adverse employment decision from Wal-Mart. Rather, the evidence
shows that, after each worker's compensation injury, Amos continued to receive high
evaluations and received several commendations for her work performance. On the other
hand, Amos points out that, during the period of her other worker's compensation claims,
she was the only loss prevention associate employed at that particular store. It was not
until Haag was hired shortly before her injury that Wal-Mart could terminate her and still
have loss prevention service. These were matters for the jury to resolve, and we "may not
interfere with the jury's resolution of conflicts in the evidence." Mann, 47 S.W.3d at 199.

 We find the evidence factually sufficient. 

SUFFICIENCY OF THE EVIDENCE TO SUPPORT DAMAGES

 Wal-Mart attacks the jury's finding that Amos' future damages are $88,000.00,
contending there is no evidence or insufficient evidence to support this finding. The correct
measure for determining future lost wages for discharge of an employee for initiating a
worker's compensation action is the sum of money the employee would earn in the future
had the employee not been terminated, less the sum of money which the employee will
actually earn in the future. Martin, 844 S.W.2d at 234. To recover future lost wages, a
plaintiff is not required to prove an exact amount, but only facts from which a jury can
determine the proper amount. Farley, 33 S.W.3d at 88.

 Amos presented evidence that, at the time of termination, she earned $10.50 an
hour and worked forty hours a week. She was thirty-four years old at the time of trial. 
Amos requested $500,000.00 in future damages, basing it on the average retirement age
of sixty-five. Amos presented more than a scintilla of evidence regarding her future
earnings had she not been terminated. However, she presented no evidence as to the
sum of money she will actually earn in the future, and she was unemployed at the time of
trial. 

 A wrongfully discharged employee has a duty to mitigate damages by making a
good faith effort to obtain and retain employment. Gulf Consol. Int'l, Inc. v. Murphy, 658
S.W.2d 565, 566 (Tex. 1983); Huerta, 964 S.W.2d at 669. Mitigation is a defensive issue
on which Wal-Mart bore the burden of proof at trial. Murphy, 658 S.W.2d at 566; Huerta,
964 S.W.2d at 669. Because Amos presented more than a scintilla of evidence regarding
her future income, the burden shifted to Wal-Mart to show she failed to mitigate her
damages. Although Amos had the burden to prove her damages, the burden rests on the
employer to show failure to properly mitigate the damages. 

 When a party attacks the legal sufficiency of an adverse finding on an issue on
which that party has the burden of proof, the party must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the issue. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989). In reviewing a "matter of law" challenge, the reviewing court must
first examine the record for evidence supporting the finding, while ignoring all evidence to
the contrary. Francis, 46 S.W.3d at 241. If there is no evidence to support the finding, the
reviewing court will then examine the entire record to see if the contrary proposition is
established as a matter of law. Id.

 In Farley, this Court found Farley's testimony that she planned to continue working
at the plant, together with the testimony that almost all of Metal Industries' employees
maintained their employment after the premises were leased to another manufacturer,
amounted to more than a scintilla of evidence in support of the jury's damages award. 
Farley, 33 S.W.3d at 89. 

 In this case, there is evidence from Amos that she attempted to obtain employment,
but was unable to do so. She testified that the only type of work she could do was loss
prevention work and that no jobs in that field were available. Amos testified she could do
the job of loss prevention associate with just one arm. Ignoring the evidence to the
contrary, this is some evidence Amos can still do the job. She testified, and medical
testimony supports, that she is limited in the use of her right arm. The medical testimony
is clear that Amos will not be able to perform any type of employment requiring the use of
her right arm because of the pain she suffers. This is some evidence supporting the jury's
finding. Wal-Mart did not prove as a matter of law that Amos failed to mitigate her
damages. 

 Wal-Mart further contends, however, that Amos' future damages should be limited
under the after-acquired evidence doctrine. Under this doctrine, if an employer 
establishes that an employee's misconduct was so severe that the employee would have
been legitimately discharged solely on that basis, after-acquired evidence of the
employee's misconduct bars reinstatement and recovery of actual damages for the period
after the employer discovered the grounds for termination. Trico Techs. Corp. v. Montiel,
949 S.W.2d 308, 312 (Tex. 1997). Wal-Mart's contention is the damages should be limited
to from the time of firing until the time it learned Amos could no longer perform her job as
loss prevention associate due to her injuries. However, Wal-Mart never presented this
issue to the trial court or the jury. The jury charge contained no instructions or questions
relating to the ability of Wal-Mart to limit damages. In its closing argument, Wal-Mart
makes a brief one-sentence reference to the evidence that Amos might not have been
physically capable of doing her job as a result of the injury. But no question or instruction
relating to this matter ever went to the jury. By not raising the issue at the trial court level,
Wal-Mart has waived this contention. The question of limiting damages via the after-acquired doctrine was not properly before the trial court and is therefore not properly before
this Court. See Tex. R. App. P. 33.1. 

 In reviewing the factual sufficiency of the evidence, we look to see if the verdict is
so against the great weight and preponderance of the evidence as to be manifestly wrong
or unjust. Mann, 47 S.W.3d at 199 (citing Ortiz, 917 S.W.2d at 772, and Cain, 709 S.W.2d
at 176). The medical testimony is clear that Amos will not be able to perform any type of
employment requiring the use of her right arm due to the pain she suffers. Amos can walk,
observe, use her eyes, and perform one-armed activities using her left arm. Again, Amos'
doctor presented evidence of her physical limitations and Amos testified regarding her
efforts to find employment and that her limitations in finding employment were based on
her lack of education and physical restrictions. 

 Wal-Mart had the burden to show Amos did not in good faith attempt to mitigate her
damages. When a party attacks the factual sufficiency of an adverse finding on an issue
on which the party has the burden of proof, the party must demonstrate on appeal the
adverse finding is against the great weight and preponderance of the evidence. Francis,
46 S.W.3d at 242. We must consider and weigh all of the evidence, and set aside a
verdict only if the evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. Id.; see Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). Wal-Mart's evidence does not refute Amos'
contentions regarding the limitations placed on the work she is capable of doing. The jury's
finding is factually sufficient regarding future damages.

 Wal-Mart also challenges the jury's award of $41,160.00 in past damages,
contending the evidence is legally and factually insufficient to support the finding. If an
employee proves retaliatory discharge, then the employee is entitled to recover lost wages,
the measure of which is the amount the employee would have earned had the employee
not been discharged in violation of the statute. Farley, 33 S.W.3d at 88. Wal-Mart
contends the only evidence submitted by Amos with regard to past damages was that she
made $10.50 an hour and usually worked forty hours a week. Wal-Mart complains no
evidence was introduced that Amos was capable of working forty hours a week from the
time of her termination until the date of trial. 

 A wrongfully discharged employee does have a duty to make a good faith effort to
obtain and retain employment. Huerta, 964 S.W.2d at 669; see also Azar Nut Co. v. Caille,
720 S.W.2d 685, 687-88 (Tex. App.-El Paso 1986), aff'd, 734 S.W.2d 667 (Tex. 1987). 
Wal-Mart contends the verdict is not supported because Amos failed to present evidence
of a good faith attempt at mitigation. However, as stated above, Wal-Mart bore the burden
to prove Amos did not in good faith attempt to mitigate her damages. There is some
evidence, based on Amos' physical limitations and lack of education, that she could not
find a job and that she did apply for positions. Wal-Mart did not prove as a matter of law
that Amos failed to mitigate. We find there is some evidence to support the jury's award
of past damages.

 Again, Wal-Mart contends the amount of damages should be limited to the point at
which Wal-Mart learned of Amos' restrictions and of the possibility that she could no longer
function as a loss prevention associate. However, this is not an issue Wal-Mart properly
raised at the trial court level. The jury did not err in failing to limit the damages based on
the after-acquired evidence doctrine.

 Amos presented factually sufficient evidence to support the jury's verdict. The jury
question properly limited the time frame for the award from the date of termination until the
date of trial. Amos presented evidence as to the number of hours she worked per week. 
Wal-Mart did not present any contradicting evidence. Rather, Wal-Mart contends Amos
failed to mitigate her damages by failing to obtain other employment. Amos presented
evidence why she did not obtain other employment, and Wal-Mart did not controvert her
contention that she was unable to work. The evidence is factually sufficient to support the
jury's past damages award of $41,160.00. 

 We affirm the judgment.

 Donald R. Ross

 Justice


Date Submitted: April 4, 2002

Date Decided: May 24, 2002


Publish

1. While City of Fort Worth v. Zimlich, 29 S.W.3d 62 (Tex. 2000), involves a whistle
blower claim, the standard of causation used in that case is applicable to Section 451
cases. See Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Tex.
Dep't of Human Servs. v. Hinds, 904 S.W.2d 629, 635-36 (Tex. 1995); Gorges
Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 667 (Tex. App.-Corpus Christi 1997, no
pet.); see also Tex. Gov't Code Ann. §§ 554.002, 554.004 (Vernon Supp. 2002)
(Whistleblower Act).