Affirmed and Memorandum Opinion filed December 11, 2007








Affirmed and Memorandum Opinion filed December 11,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00195-CV

_______________

 

MITZIE COSTELLO, Appellant

 

V.

 

BANK OF AMERICA, N.A., Appellee

                                                                                                                                               


On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 03-36328

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment denying Mitzie
Costello=s claims based on
retaliatory discharge for filing a workers= compensation
claim.  Bank of America, N.A. terminated Costello=s employment on
the basis that she violated the Bank=s policy against
submitting inaccurate time sheets.  Costello contends the Bank fired her in
retaliation for filing a workers= compensation
claim.  Costello appeals the summary judgment claiming she raised fact issues
as to whether she established a causal link between her termination and her
workers= compensation
claim.  We affirm.








I.  Summary Judgment Evidence

The Bank submitted affidavits from Tiffany Glende, a
Banking Center Service Manager and Frederick Buckner, the Bank=s Regional
Manager.  The Bank also attached   Costello=s deposition and
the deposition of Tania Brugger, Costello=s immediate
supervisor. Copies of Costello=s time sheets, written warnings regarding
inaccuracies in her time sheets,  the workers= compensation
file, and a transcript of the hearing before the Texas Workforce Commission
were also included with the Bank=s motion for
summary judgment.  In response, Costello submitted her affidavit.  Accordingly,
the parties presented the following summary judgment evidence.

On April 4, 2002, Costello worked as a personal banker in a
branch of the Bank. Costello=s supervisor, Tania Brugger, asked her to
move some plants inside the bank building.  While moving the plants, Costello
injured her back and neck.  Costello continued to work until May 9, 2002, when
a physician advised her not to return to work until further notice.  However, 
Costello returned to work because she wanted to finish several projects.  She
claimed to have endured mistreatment from her fellow employees and Brugger
after returning to work.  When Costello reported the alleged mistreatment to
the Bank=s personnel
center, another employee advised her to file a workers= compensation
claim. 








On May 15, 2002, Costello received a written warning
regarding attendance and inaccurate time sheet reporting.  At that time, she
was placed on notice, pursuant to Bank policy, that her job would be in
jeopardy if her attendance and time sheet accuracy did not improve.  On May 21,
2002, Costello stopped working because of her injury.  She returned to work
September 23, 2002.  Costello=s physician specified that she should not
work more than eight hours per day.  He also required Costello to remain off
work on Wednesdays and Saturdays in order to attend physical therapy
appointments.  Costello=s hours were changed to accommodate the
doctor=s orders.  On
September 27 and September 30, Costello was verbally counseled for
inappropriate behavior and time management.  On September 26, 2002, Brugger
sent Costello home early so that Costello could attend a meeting scheduled for
6:30 that evening without exceeding eight working hours for the day.  The
meeting ended at 7:30, and all employees left by 7:45.  Brugger and Tiffany
Glende stayed a few minutes later, but left at 8:13 at which time they set the
Bank=s alarm.  When
Costello submitted her time sheet for September 26, 2002, the record indicated
that she had worked until 8:45 p.m.  After Glende checked with the alarm
company, she informed Brugger that Costello had inaccurately reported her
time.  Brugger was leaving on vacation that day, so she instructed Glende to
call Frederick Buckner, the Regional Manager, and the Bank=s Personnel Center
to determine how to handle Costello=s time sheet
inaccuracy.

Pursuant to Bank policy, Glende called Buckner and
explained that the Bank had previously counseled Costello regarding inaccurate
time entries.  Buckner recommended that Glende confer with the personnel center
before making a final decision to discharge Costello.  According to Glende=s affidavit, Atime sheet abuse
is not tolerated and is subject to immediate termination.@  Glende further
stated in her affidavit that during her conversation with Buckner, neither
party discussed Costello=s workers= compensation
claim or her injury.  Glende then phoned the personnel center and explained the
time sheet inaccuracy to a human resources representative.  The human resources
representative recommended that Glende terminate Costello based on the Bank=s policy on time
sheet abuse.  Based on Buckner=s and the personnel center=s recommendations
and Glende=s own assessment of Costello=s time sheet infraction,
Glende decided to discharge Costello.  She did not consult with Brugger about
the decision.  Moreover, Brugger was not informed until she returned from
vacation.








On October 11, 2002, Glende and the Bank=s Teller Manager
met with Costello and asked for her explanation of the 8:45 time sheet entry. 
Costello initially responded she did not recall that night, then stated the
entry must have been a mistake.  Glende informed Costello that the Bank had
previously warned her that time sheet inaccuracy was unacceptable and that it
was grounds for her immediate termination.  In her affidavit, Glende stated
that when her decision to discharge Costello was based entirely on the error
contained on her time sheet.  Her workplace injury or claim for workers= compensation
benefits had no bearing on the termination.  Glende averred that she was
unaware of Costello=s workers= compensation
claim when she discharged Costello.

Several months later, Costello sued the Bank contending
that she was fired in retaliation for filing a workers= compensation
claim.  The Bank filed traditional and no-evidence motions for summary judgment
on the grounds that Costello presented no evidence of a causal link between the
filing of a workers= compensation claim and her termination,
or that the Bank=s stated reason for discharge was false. 
The trial court granted summary judgment without specifying the grounds for its
ruling.

II.  Standard of Review and Applicable Law

We review a grant of summary judgment under a de novo
standard.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  When, as here, the trial court grants summary judgment without
specifying the grounds on which it bases its decision, we must affirm the
judgment if any of the grounds presented by the movant are meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000). 
We take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.  Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).








In a traditional
motion for summary judgment, the movant has the burden of demonstrating that
there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law. Tex. R. Civ.
P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997).  If the movant establishes its right to summary judgment, the burden
shifts to the nonmovant to raise a genuine material fact issue sufficient to
defeat summary judgment. See Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995); Lundstrom v. United Servs. Auto. Ass=n.-CIC, 192 S.W.3d 78,
84 (Tex. App.CHouston [14th Dist.] 2006, pet. denied). 

 

Section 451.001 of
the Texas Labor Code prohibits an employer from discharging an employee for
filing a workers= compensation claim in good faith. Tex.
Lab. Code Ann. ' 451.001 (Vernon 2006).  The employee
has the initial burden of demonstrating a causal link between the discharge and
the filing of a workers= compensation claim.  Benners v. Blanks
Color Imaging, Inc., 133 S.W.3d 364, 369 (Tex. App.CDallas 2004, no
pet.).  The employee need not show he was fired solely because of filing the
workers= compensation
claim, but must show that, Abut for@ the filing of the
claim, the discharge would not have occurred.  Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 386, 386 (Tex. 2005).

 








Once the employee
establishes a causal link, the employer bears the burden to rebut the alleged
improper termination by showing that a legitimate reason exists for
termination. See Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450B51 (Tex. 1996).
Thereafter, to survive a motion for summary judgment, the burden shifts back to
the employee to produce controverting evidence raising a fact issue as to a
retaliatory motive. McIntyre v. Lockheed Corp., 970 S.W.2d 695, 697
(Tex. App.CFort Worth 1998, no pet.).  An employee may establish
a link between termination and the filing of a workers= compensation
claim through circumstantial evidence or through reasonable inferences from the
evidence.  Cont=l Coffee, 937 S.W.2d at
451; Lee v. Haynes & Boone, L.L.P., 129 S.W.3d 192, 196 (Tex. App.CDallas 2004, pet.
denied).  Circumstantial evidence sufficient to establish a causal link between
termination and filing a workers= compensation
claim may include (1) knowledge of the compensation claim by those making the
termination decision; (2) an expression of a negative attitude toward the
employee=s injured
condition; (3) a failure to adhere to established company policies; (4)
discriminatory treatment in comparison to similarly situated employees; and (5)
evidence that the stated reason for the discharge was false.  Cont=l Coffee, 937 S.W.2d at
451.  In addition, temporal proximity between the assertion of a protected
right and termination may be evidence of a causal connection.  Fields v.
Teamsters Local Union No. 988, 23 S.W.3d 517, 529 (Tex. App.CHouston [1st
Dist.] 2000, pet. denied).  

 

III.  Summary Judgment Analysis

 

Costello contends
she has raised fact issues as to whether (1) the decision-makers had knowledge
of her claim, (2) a negative attitude toward her condition was expressed, and
(3) the stated reason for the discharge was false.  Costello also contends the temporal
proximity between her return to work from her injury and her termination is
sufficient to create a fact issue concerning a causal link.  In responding to
the Bank=s motion for
summary judgment, Costello made the following averments in her affidavit:

Tonia Brugger was my immediate
supervisor.  After my on the job injury, after I came back to work in
September, 2002, and on more than one occasion Ms. Brugger told me I was a Awhiner@, [ ].[1] 
I responded to her that AI=m only just human.@  I did not state this on deposition and recalled it
after the deposition was over.  Two weeks after I came back I was terminated. 
I was an employee for over twelve years, and had been told on numerous
occasions prior to my on the job injury from Tonia Brugger that I was Awonderful@.  After my injury I was written up
for seven items on May 15, 2002, after my injury.  Some of these alleged items
were prior to my injury.  I was even written up for time that I missed due to
my on the job injury for being out on 5/09, 5/10, 5/13, and 5/14.  (See exhibit
No. 1, a write up that I received from Tonia Brugger on May 15, 2002, less than
two months after my injury on April 4, 2002.)  Tonia Brugger was present when I
was injured on the job on April 4, 2002, and witnessed my injury.  

Tonia Brugger allegedly gave this
write up to personnel and I was terminated.

 

 

 

 








A.  Knowledge of
the Workers= Compensation Claim

We consider first
whether those who decided to discharge Costello knew about her compensation
claim.  Glende and Buckner made the termination decision on behalf of the
Bank.  It is undisputed that Buckner had no knowledge of Costello=s injury.  Glende
stated in her affidavit she did not recall Costello=s leave was due to
an injury, nor did she have knowledge regarding Costello=s workers= compensation
claim. It is equally undisputed that Brugger had knowledge of Costello=s injury and her
workers= compensation
claim, but Brugger did not fire Costello. 

Costello argues,
however, that Glende=s knowledge of Costello=s injury can be
inferred from the circumstances.  In her summary judgment proof, Costello makes
no reference to Glende=s knowledge of her injury or her workers= compensation
claim.  Moreover, Costello did not controvert any of the essential averments in
Glende=s affidavit.
Costello has failed to meet her summary judgment burden to show that the
decision makers had knowledge of her workers= compensation
claim.

B.  Negative
Attitude Toward Costello=s Injury

Costello contends
there is overwhelming evidence that Brugger expressed a negative attitude
toward Costello=s injury.  Brugger, however, was not the
decision maker in Costello=s termination.  Glende, Buckner, and the
individual from the personnel center participated in the decision to terminate
Costello, and Glende made the final decision.  The fact that someone who is not
involved in the employment decision expressed negative feelings is not evidence
that the decision had a discriminatory motivation.  Russell v. McKinney
Hosp. Venture, 235 F.3d 219, 229 (5th Cir. 2000).  As such, Brugger=s attitude is not
relevant to whether the employer exhibited a negative attitude toward Costello=s injury.  See
Wal-Mart Stores, Inc. v. Amos, 79 S.W.3d 178, 187 (Tex. App.CTexarkana 2002, no
pet.).








Costello urges
this court to consider the Aconduit,@ or Acat=s paw,@ theory adopted by
some federal courts in discrimination cases.  Costello contends that because
Brugger expressed a negative attitude toward Costello=s injury and
Brugger informed Glende of her negative attitude, that Brugger=s attitude can be
imputed to Glende, the decision maker.  The courts  applying the conduit theory
limit it to circumstances in which one supervisor makes a recommendation
regarding an employee to another innocent supervisor who acts on that
recommendation without conducting any independent judgment.  See Long v.
Eastfield College, 88 F.3d 300, 307 (5th Cir.1996) (concluding that if the
innocent supervisor Adid not conduct his own independent
investigation, and instead merely >rubber stamped= the
recommendation of [the discriminatory supervisors], the causal link between
[the employees=] protected activities and their subsequent
terminations would remain intact.@); Shager v.
Upjohn Co., 913 F.2d 398, 405 (7th Cir.1990) (AIf [the employment
board] acted as the conduit of [the supervisor=s] prejudice-his
cat=s-paw-the
innocence of its members would not spare the company from liability.@); Azzaro v.
County of Allegheny, 110 F.3d 968, 973B74 (3rd Cir.1997)
(finding evidence to support liability when a discriminating supervisor
designed a plan to reorganize a department that had the effect of terminating
the plaintiff, which was approved by others without independent scrutiny).

The Texas Supreme
Court has declined to adopt the conduit theory, and we must follow precedent.  See
City of Fort Worth v. Zimlich, 29 S.W.3d 62, 70B71 (Tex. 2000);
Harris County v. Vernagallo, 181 S.W.3d 17, 26, n.15 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied).   In addition, Glende=s actions do not
fit the conduit theory as typically applied.  She was not an innocent
supervisor who acted on the recommendation of one with a negative attitude. 
She initially  consulted with Buckner, then she conferred with the Bank
personnel center before determining what action to take concerning Costello. 
Glende did not discharge Costello on the basis of Brugger=s recommendation. 
Accordingly, we conclude that Costello failed to meet her summary judgment
burden to establish that she was discharged by personnel who manifested a
negative attitude toward her workers= compensation
claim.








C.  Adherence to
Company Policy

Costello contends
she was not terminated according to the company policy on time sheet abuse, but
rather in retaliation for filing a workers= compensation
claim.  Specifically, Costello references Brugger=s deposition
testimony that the Bank=s policy on time sheet abuse Adepended on the
situation.@  However, Costello did not raise this issue in her
response to the motion for summary judgment, nor did she present any evidence
that the Bank did not adhere to its policy.  

D.  Less Favorable
Treatment than Similarly Situated Employees

Costello does not
contend she was treated differently than similarly situated employees.

E.  Stated Reason
for Discharge was False

Costello contends
she raised a fact issue regarding whether the Bank=s stated reason
for discharge was false because (1) the termination process was triggered by
Brugger and was Adependent on her bias and false
allegations,@ and (2) she was terminated shortly after returning to
work.  Costello has failed to present any evidence that Brugger Atriggered@ the termination
process, or that Brugger participated in any manner in the termination
decision. 

Further, the
timing of Costello=s termination does not raise a fact issue
with regard to the truth of the stated reason for discharge.  Costello contends
that the timing of her termination, less than one month after her return to
work from her injury, creates a fact issue as to whether the stated reason for
discharge is false.  Contrary to Costello=s assertion, the
relevant time period to be considered is the time between the protected
activityBin this case, the
filing of the workers= compensation claimBand termination.  See
Wal-Mart Stores, Inc., 79 S.W.3d at 178.  The Bank filed Costello=s workers= compensation
claim no later than May 21, 2002.  Costello was terminated on October 11,
2002.  Therefore, the relevant time period is between May 21, 2002 and October
11, 2002.  








Although an injury
to an employee, followed closely by termination of that employee, is strong
evidence the two events are related, such circumstance alone does not
constitute evidence that the stated reason for the employee=s discharge was
false.  Id.  In this case, Costello was not terminated until at least
four months after she filed her workers= compensation
claim, and more than five months after she was injured.  Pursuant to the Bank=s policy, she was
terminated after the second time sheet violation.

IV.  Conclusion

The trial court
did not err in granting the Bank=s motion for
summary judgment.  As the employee, Costello bears the initial burden to raise
a fact issue demonstrating a causal link between the discharge and the filing
of a workers= compensation claim.  The Bank presented summary
judgment proof that Costello was not discharged because she filed a workers= compensation
claim.  In refuting the Bank=s proof, Costello failed to present
circumstantial evidence showing that (1) those making the termination decision
had knowledge of the workers= compensation claim, (2) the decision
makers expressed a negative attitude toward her injured condition, (3) the Bank
failed to adhere to established company policies, (4) she was treated
differently than similarly situated employees, or (5) the Bank=s stated reason
for discharge was false.  Accordingly, we hold Costello failed to raise a fact
issue supporting a causal link between her workers= compensation
claim and the Bank=s decision to terminate her employment.[2] 
The judgment of the trial court is affirmed.

 

 

/s/        Charles W.
Seymore

Justice

 

Judgment
rendered and Memorandum Opinion filed December 11, 2007.

Panel
consists of Justices Anderson, Fowler, and Seymore.









[1]  On a motion from the Bank, the trial court ordered the phrase, Aobviously referring to my on the
job injury and expressing a negative attitude toward my injury@ struck from the affidavit.





[2]  Because we find the trial court properly granted the
Bank=s traditional motion for summary judgment, we need not
address the no-evidence motion.