**LONE STAR STEEL COMPANY,**
Appellant,

v.

**Bridget HATTEN, Appellee.**

No. 06–02–00035–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 11, 2002.

Decided April 30, 2003.

Rehearing Overruled May 20, 2003.

Michael P. Maslanka, Theresa M. Gegen, Godwin Gruber, PC, Dallas, for appellant.

Frank Supercinski, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

On Friday, October 23, 1998, while "pulling flash" at Lone Star Steel Company (Lone Star), Bridget Hatten noticed a pain in her right hand.[1] She reported her injury to Lone Star's medical department the following Sunday, October 25. Lone Star arranged for Hatten to see a doctor on Monday, October 26, and the doctor diagnosed Hatten as having a strained right hand. The doctor also noted that Hatten could return to her regular duties, but if her condition worsened, she should be restricted from pulling flash. From October 25 to December 7, 1998, Hatten's condition continued to deteriorate, ultimately resulting in her inability to perform her regular duties. As a result, Lone Star placed Hatten into the alternative work program on December 8, 1998, in accordance with its policy and labor agreement.[2]

1. When steel sheets are cut and formed into tubes, some of the steel residue remains in the tube, and workers, such as Hatten, are required to pull that residue from the tube, a process referred to as "pulling flash."

2. In the labor agreement between Lone Star and the labor union, each employee is as-

Lone Star's alternative work program is available only to employees who have (1) been injured at work and (2) filed a workers' compensation claim. After an employee has been in the program for thirty days, his or her medical condition is re-evaluated. If the employee's condition has not improved, Lone Star places him or her on restricted leave without pay until medically cleared to return to work. In the present case, Hatten was placed in the program on December 8, and her condition was reassessed on January 7, 1999. On January 7, the doctor determined Hatten suffered from carpal tunnel syndrome in her right hand and showed no signs of improvement. Further, the doctor recommended Hatten undergo surgery to correct the problem. At the same time, Lone Star learned from its workers' compensation insurance carrier, Petroinsurance, that Hatten's injury may not have been caused at work. For those reasons, Hatten was taken out of the alternative work program and placed on restrictive leave without pay until she was medically cleared to return. According to company policy, it is the employee's duty to inform Lone Star of his or her medical status so he or she can return to work once medically cleared.

After Hatten was placed on restrictive leave, the Texas Workers' Compensation Commission (TWCC) determined Hatten had received a workplace injury to her right hand and was entitled to a lump sum back payment to compensate her from the time she was placed on restrictive leave until the time of the TWCC decision. The TWCC also held Hatten was entitled to weekly payments until the disability no longer existed or she reached maximum medical improvement. On or about Feb-

ruary 1, 2000, Hatten received a letter from Petroinsurance indicating that she had reached maximum medical improvement, as evidenced by her doctor's examinations, and that her workers' compensation benefits would cease. There is no evidence in the record Hatten informed Lone Star of her ability to return to work before filing this lawsuit on February 8, 2000. After learning, through Hatten's original petition filed in this action, that she had been cleared to return to work, Lone Star sent Hatten a letter dated March 8, 2000, informing her a position was available and she could return to work. Hatten returned to work and has been an employee of Lone Star throughout the duration of this lawsuit. She has been paid the sums awarded her by the TWCC.

Hatten, however, claims in her lawsuit that Lone Star discriminated against her because she filed a workers' compensation claim. Specifically, Hatten alleged that being placed on restrictive leave without pay constituted a violation of Section 451.001 of the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). After a jury trial, the trial court rendered judgment in favor of Hatten based on a finding that Lone Star had violated the Texas Labor Code, awarding Hatten $50,000.00 in compensatory damages and $2,000.00 in lost wages.

On appeal, Lone Star brings the following points of error: (1) the evidence was legally insufficient to support a finding that Lone Star violated the Texas Labor Code; (2) the evidence was legally insufficient to support an award for compensatory damages; and (3) the evidence was

---

signed a classification level according to their seniority, and there is an exclusive list of jobs that can be performed at each level. If, however, an employee is unable to perform any of the jobs listed for his or her classification level because of an injury suffered at work, he or she is placed into an alternative work program so they can continue to work, performing duties that do not violate their medical restrictions, and still receive full pay.

legally insufficient to support an award for lost wages.

### Labor Code Violation?

In its first point of error, Lone Star contends the evidence was legally insufficient to support the trial court's judgment that it violated the Texas Labor Code. In reviewing a no-evidence claim, we must consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex. 1992). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Browning–Ferris, Inc.,* 865 S.W.2d at 928. Where circumstantial evidence is relied on and the circumstances are equally consistent with either of two facts, however, no more than a scintilla of evidence supports a finding and a legal sufficiency challenge must be sustained. *Litton Indus. Prods., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984).

■ Section 451.001 of the Texas Labor Code provides in pertinent part:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

Tex. Lab.Code Ann. § 451.001. In order to show discrimination on the part of the employer, the employee must establish a causal connection between the discriminating act and filing a workers' compensation claim. *Inv. Prop. Mgmt., Inc. v. Montes,*

821 S.W.2d 691, 694 (Tex.App.-El Paso 1991, no writ). Circumstantial evidence, and the reasonable inferences from such evidence, can prove the causal connection. *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 658 (Tex.App.-El Paso 1989, writ denied). In determining what circumstantial evidence can provide the causal link between the discriminatory act and filing a workers' compensation claim, courts have considered the following factors: (1) knowledge of the compensation claim by those performing the discriminatory act; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the adverse action was false. *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 61 (Tex.App.-Fort Worth 1993, writ denied); *Paragon Hotel Corp.,* 783 S.W.2d at 658.

■ Hatten contends that being placed on restrictive leave without pay constituted a discriminatory action on the part of Lone Star. Therefore, she had the burden of proving a causal connection between that act and filing a worker's compensation claim. *Paragon Hotel Corp.,* 783 S.W.2d at 658.

### 1. Knowledge of the Compensation Claim?

■ When Hatten was placed on restrictive leave, she was enrolled in the alternative work program. In order to be placed in the alternative work program, the employee must (1) have sustained a workplace injury and (2) filed a workers' compensation claim. Lone Star was obviously aware of Hatten's workers' compensation claim. Mere knowledge of Hatten's claim does not, however, establish a causal link between the alleged discriminatory

behavior and the filing of the claim, but is only one factor to be considered in light of the record as a whole. *See Garcia v. Allen,* 28 S.W.3d 587, 601 (Tex.App.-Corpus Christi 2000, pet. denied); *Urquidi v. Phelps Dodge Ref. Corp.,* 973 S.W.2d 400, 405 (Tex.App.-El Paso 1998, no pet.).

2. *Expression of Negative Attitude?*

Hatten contends Lone Star expressed a negative attitude toward her injury by (1) having an economic incentive to dispute her claim, (2) allowing an insurance adjuster to question Hatten at Lone Star's medical department, and (3) requiring her to perform duties that were against her medical restrictions.

■ First, Hatten relies heavily on Lone Star's insurance policy with Petroinsurance to establish a negative attitude toward her injured condition. The policy provides that Lone Star shall reimburse Petroinsurance for all payments made or expenses incurred as a result of a workers' compensation claim up to the deductible amount of $100,000.00. Because Lone Star had an economic incentive to dispute Hatten's workers' compensation claim, she contends we can make the inference that Lone Star must have also expressed a negative attitude toward her injury. In support, Hatten relies on *Whole Foods Market Southwest, L.P. v. Tijerina,* 979 S.W.2d 768, 780 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). *Tijerina,* however, stands for the proposition that economic incentive alone will not support a finding for punitive damages if a violation of Section 451.001 has occurred, but economic incentive combined with badgering of the employee and testimony that money was a factor in terminating the employee, all of which were present in that case, could support a judgment that the employer act-

ed with malice in violating the Texas Labor Code. *Id.* In the present case, *Tijerina* is not persuasive because Hatten failed to produce any evidence that, combined with economic incentive, would support a conclusion that Lone Star expressed a negative attitude toward her injuries.[3] Further, an employer may contest the cause of an alleged on-the-job injury and the compensability of those injuries without violating the Texas Labor Code. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 452 (Tex.1996). While Lone Star had economic incentive to dispute Hatten's claim, that fact alone does not constitute an expression of a negative attitude toward her injury.

■ Second, Hatten contends Lone Star exhibited a negative attitude toward her injury by allowing an adjuster from Petroinsurance to ask questions about her injury. Hatten claims to have been called to the medical department, where an adjuster from Petroinsurance questioned her. Hatten alleges this behavior showed a negative attitude toward her injury because she was not given adequate notice of the interview. There is nothing in the record supporting such an allegation. While Hatten elicited testimony from a Lone Star supervisor that Petroinsurance agents have in the past conducted interviews at the Lone Star plant, Hatten testified her only interview with a Petroinsurance adjuster took place at her home, and the adjuster called Hatten the day before to inform her of the interview. In any event, we have previously stated that contesting the injury and the compensability of the same does not constitute a violation of the Texas Labor Code, and certainly the insurance company would have the right to ascertain the cause and extent of Hatten's injuries before making a decision on

---

**3.** Hatten also cites *America West Airlines, Inc. v. Tope,* 935 S.W.2d 908 (Tex.App.-El Paso 1996, no writ), but that case is unpersuasive for the same reason.

whether to grant or deny the claim. *See id.* There is no evidence in Hatten's being interviewed by an insurance adjuster that demonstrates Lone Star expressed a negative attitude toward Hatten's injury or that Lone Star discriminated against her for filing her claim.

■ Third, Hatten contends Lone Star expressed a negative attitude toward her injury by requiring her to perform duties that contradicted her medical restrictions. Hatten testified she was required to pull flash even though her doctor restricted her from performing such a duty.[4] Therefore, there was some evidence allowing the factfinder to conclude a negative attitude toward Hatten's injury existed. There was no evidence, however, in that event suggesting a causal link with Hatten's filing of a claim.

### 3. *Breaching Company Policy?*

■ Hatten contends Lone Star failed to adhere to company policy because (1) she was required to pull flash after her doctor had restricted her from performing such a duty, and (2) she was not immediately placed into the alternative work program after reporting her injury. First, Hatten produced testimony from Lone Star's medical supervisor, that when an employee reports an injury, Lone Star's policy is to provide reasonable medical care to that employee. Accordingly, she has produced some evidence Lone Star failed to adhere to established company policy by requiring her to work in contradiction with her medical restrictions. Again, however, there was no evidence of any link between that act and Hatten's filing of a claim.

Lone Star did not violate company policy by not placing Hatten into the alternative work program immediately after she reported her injury. The alternative work program is for employees who are not able to perform their regular duties. After Hatten's initial doctor visit on October 26, 1998, the doctor noted Hatten was free to return to her regular duties, but if her condition worsened, she should be restricted from pulling flash. It was not until December 7, 1998, that Hatten's medical restrictions, as indicated on her doctor's reports, prevented her from performing any of the duties at her employment level, and it is undisputed Hatten was placed in the alternative work program on December 8. Therefore, according to company policy, Lone Star was not required to place Hatten in the alternative work program immediately after she reported her injury, but only when her medical restrictions prevented her from performing any of the regular duties at her employment level, which did not occur until December 7.

Company policy and the labor agreement dictate that, once employees are placed in the alternative work program, each employee's medical condition is reevaluated after thirty days in the program. If there is no sign of improvement, the employee will be placed on restrictive leave without pay. Hatten has failed to produce any evidence Lone Star did anything other than follow its established policies with regard to employees in the alternative work program. Hatten was placed in the program on December 8, and her condition was reassessed on January 7. On January 7, the doctor determined Hatten suffered from carpal tunnel syndrome in her right hand and showed no signs of

**4.** Hatten's testimony contradicted her previous statements made at trial and during her deposition, but in a legal sufficiency review, we must disregard such evidence and consider only that in favor of the trial court's judgment. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

improvement. Further, the doctor recommended Hatten needed surgery to correct the problem. At the same time, Lone Star learned from its workers' compensation insurance carrier, Petroinsurance, that Hatten's injury may not have been caused at work. For those reasons, Hatten was taken out of the alternative work program and placed on restrictive leave without pay until she was medically cleared to return. Accordingly, Hatten failed to present any evidence Lone Star acted in violation of company policy by placing her on restrictive leave.

### 4. *Discriminatory Treatment?*

Hatten contends Ronald Hawkins received similar injuries at Lone Star and was allowed to continue working. There is nothing in the record supporting her contention. The only evidence produced at trial with respect to Hawkins is the following testimony from Lone Star's safety manager:

[Counsel]: And how many of those work related carpal tunnel injuries have you seen out there?

[Witness]: Since '95 that I have worked with, about three or four.

[Counsel]: Is Ronald Hawkins one of them?

[Witness]: Mr. Hawkins has a claim, I think, that's currently working that that [sic] is a diagnosis, yes, sir.

[Counsel]: And did you—have you seen him since that injury?

[Witness]: I have seen him once, yes, sir.

[Counsel]: And did he appear with his arms and hands and both of them out in slings?

[Witness]: Not at the time I saw him, no, sir.

[Counsel]: Were you aware of that happening?

[Witness]: No, sir, I'm not.

This testimony is no evidence Lone Star gave preferential treatment to another employee. Because there is no evidence Hawkins was a similarly situated employee, there is no evidence of discriminatory treatment in comparison to similarly situated employees. *See Wal–Mart Stores, Inc. v. Amos,* 79 S.W.3d 178, 190 (Tex. App.-Texarkana 2002, no pet.).

Hatten has failed to present any evidence Lone Star placed her on restricted leave for any reason other than she was no longer qualified to be in the alternative work program and she medically could not perform her regular duties.

### *Conclusion*

Based on the foregoing, Hatten has failed to establish a causal link between being placed on restrictive leave and filing a workers' compensation claim. While requiring an employee to perform tasks that are in contradiction with his or her medical restrictions is some evidence a negative attitude toward the employee's injury existed, it is no evidence of any *expression* of such a negative attitude when considered in light of the other factors, and it is insufficient to establish a causal link between the alleged discriminatory behavior and Hatten's filing of a workers' compensation claim. Because a causal link has not been established between Lone Star's allegedly discriminatory behavior and Hatten's filing of a workers' compensation claim, there is no evidence to support the trial court's judgment. Lone Star's first point of error is sustained.[5]

---

**5.** Even if Lone Star had violated Section 451.001 of the Texas Labor Code, this Court, after reviewing the record in its entirety, finds no evidence to support an award of either measure of damages awarded below. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 1996).

For the reasons stated, we reverse and render a take-nothing judgment in favor of Lone Star.